RICHARDS v. HALLIDAY et al.

(Circuit Court of Appeals, Third Circuit. December 9, 1901.)

No. 5.

1. CORPORATIONS—CHATTEL MORTGAGES—EFFECT OF INSOLVENCY.
   The fact that a corporation was insolvent at the time it executed a chattel mortgage does not necessarily render such mortgage invalid as to creditors, under the law of New Jersey.

2. JUDICIAL SALE—RIGHTS OF PURCHASER—SALE SUBJECT TO LIENS.
   Under the law of New Jersey, as settled by decision, a purchaser of property at a receiver's sale, "upon the terms and conditions and subject to the obligations set forth and referred to in" the notice of sale, which stated that the property would be sold "subject to all chattel mortgages. * * * thereon and subject to confirmation by the chancellor," which sale was confirmed after notice to the mortgagees, whose names were set out in the receiver's report, and who were present by counsel at the confirmation, is bound by the condition stated, and cannot maintain a suit in equity to set aside one of the mortgages, on the ground that the mortgagor corporation was insolvent when it was executed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Henry E. Richards, for appellant.

Henry B. Taylor, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This bill was brought on February 24, 1894, by Willard Richards, here the appellant, for the purpose of having declared invalid and set aside a chattel mortgage for $4,132, made, executed, and delivered on October 28, 1892, by the National Time Stamp Company, a corporation of the state of New Jersey, to Frank H. Halliday, one of the defendants, and by him assigned to persons who were made codefendants with him in the suit. In proceedings instituted on March 24, 1893, in the court of chancery of New Jersey, the National Time Stamp Company was adjudged to be insolvent, and Chauncey G. Parker was appointed receiver for the corporation. On October 11, 1893, at a public sale by the receiver, Willard Richards became the purchaser of all the property and assets of the corporation, consisting of machinery, tools, stock, patent rights, and credits, for the lump sum of $1,000, "subject to all chattel mortgages, judgments, and other liens thereon." The bill sets up two grounds for avoiding the mortgage: First, that it was given without any valuable consideration whatever; and, second, that it was made, executed, and delivered at a time when the company was insolvent, and for the purpose of giving an illegal preference to Frank H. Halliday, who was an officer and director of the company, and knew of its insolvency. Upon the pleadings and proofs the circuit court dismissed the bill. Whether the decree of dismissal was right we are called on to determine.

Now, as to the alleged lack of valuable consideration, our examination of the proofs has satisfied us that the averments of the bill are not sustained. To the contrary, the evidence, we think, af--

firmatively establishes that the mortgage was given to secure a bona fide indebtedness to its full amount due from the company to Halliday.

In the view we take of the case, it is not necessary for us to determine whether or not insolvency of the company at the date of its mortgage was shown. It is enough to say that, even if the company was insolvent, the mortgage to Halliday was not necessarily void as to creditors. Savage v. Miller, 56 N. J. Eq. 432, 36 Atl. 578, 39 Atl. 665. The more important question is whether in view of the terms of his purchase at the receiver's sale, and having regard to all the circumstances, it was open to the complainant in this bill to attack the mortgage on the ground of the insolvency of the company at the time it was given. To sustain his right so to do the appellant cites the decision of the court of errors and appeals of New Jersey in the case of Water Co. v. De Kay, 36 N. J. Eq. 548. The court there, indeed, recognized it to be the general rule that a purchaser at a judicial sale has the right to attack the validity of any apparent incumbrance on the property purchased, and held that the particular case then before the court was within that rule. There a receiver who was acting under a simple order to sell at public auction expressed in his conditions of sale that the property would be sold "subject to all legal liens and incumbrances thereon," and the sale was so reported to and confirmed by the court, and a deed was made accordingly to the purchasers. It was held that nothing thus done changed the legal effect of the exercise of the naked power contained in the order of sale. In the course of its opinion, however, the court significantly said:

"This testimony does not warrant the inference that the purchasers in fact agreed at the sale to take the property and subject it to the complainant's mortgage, whether it was a legal incumbrance or not. The facts are wholly unlike those upon which this court held, in Warwick v. Dawes, 26 N. J. Eq. 548, 556, that a purchaser at a judicial sale was estopped. There the purchaser who sought to invalidate a mortgage bought the mortgaged premises at another foreclosure sale, in the presence of the mortgagee's solicitor, expressly subject to the mortgage in question, and agreed to pay the amount due on it. By this device he got the property for a price just the amount of the mortgage debt less than he would have got it if he had not agreed to admit that the mortgage was a valid lien. Under these circumstances, his endeavor to repudiate the mortgage was a fraud, and was construed to be an estoppel."

In the present case the order of sale directed the receiver to sell free and clear of all incumbrances, provided the price was not less than $8,000. The property was offered at public auction after due notice, but the receiver was unable to effect a sale in accordance with the prescribed terms. The "agreed state of facts" contained in this record, after so stating, sets forth "that the said receiver issued a further notice, a true copy of which is hereunto annexed, and marked 'Schedule D,' that he would offer the said property for sale on the eleventh day of October, eighteen hundred and ninety-three; and that on the said eleventh day of October, eighteen hundred and ninety-three, said receiver sold said property at public auction, at 802 Broad street, in the city of Newark, New Jersey, to the complainant, for the sum of one thousand dollars, but which

sale was made upon the terms and conditions, and subject to the obligations, set forth and referred to in said notice last mentioned." This last-mentioned notice (Schedule D) set forth that the property would be sold "subject to all chattel mortgages, judgments, and other liens thereon, and subject to confirmation by the chancellor." The receiver made report to the court of chancery of all he had done. In that report he set forth that the property was incumbered by three chattel mortgages (one of them being the Halliday mortgage), and also by three judgments, one of them held by the Essex County National Bank, and one of them by the Bloomfield National Bank. On November 25, 1893, the court of chancery made the following order:

"This matter being opened to the court by Chauncey G. Parker, counsel pro se; and it appearing by the report of said Chauncey G. Parker, receiver herein, that said Parker, as receiver, has sold all the property and effects of the National Time Stamp Company to one Willard Richards for the sum of one thousand dollars, subject to all chattel mortgages, judgments, and other liens thereon, and subject to confirmation of this court; and it further appearing that Samuel D. Mershon, the estate of Sarah A. Peddie, George W. Morris, Frank B. Colton, Richard B. Jenkinson, Alfred L. Wilkins, the Bloomfield National Bank, and the Essex County National Bank, and Frank H. Halliday have had due notice of this application: Now, therefore, on motion of said receiver, and in the presence of Frederic W. Ward, of counsel, with Frank H. Halliday and others, and Henry B. Taylor, of counsel, with said Colton & Jenkinson, it is on this twenty-fifth day of November, eighteen hundred and ninety-three, ordered and decreed that the report of said receiver, and all matters and things therein contained, be, and the same is hereby, confirmed, and the said receiver is hereby authorized and directed to make and give good and sufficient assurances and conveyances in the law for the transfer to the said Richards of the title to the property and effects so as aforesaid sold," etc.

Accordingly the receiver did make, execute, and deliver to Willard Richards bills of sale and assignments for the property and effects so sold.

The chancellor's decree, confirming all that the receiver had done, was equivalent to a previous direction. It will be observed that notice of the application to the chancellor to confirm the sale was given to Halliday and the assignees of his mortgage and to the other mortgagees and the judgment creditors. All the parties in interest were before the chancellor. Can it be doubted that all parties understood that the property in the hands of the purchaser was to be subjected to the named incumbrances? Undoubtedly Halliday and his assignees acted upon the understanding that the purchaser took the property subject to their mortgage as a valid lien. This case is not within the ruling in Water Co. v. De Kay. There, as we have seen, the sale was subject only to "legal liens and incumbrances." That condition left it open to the purchasers to contest the legal existence of apparent incumbrances. Here, however, the sale which the chancellor confirmed was "subject to all chattel mortgages," etc. The Halliday mortgage was brought to the attention of the chancellor, the owners of the mortgage were notified to come before him, and the decree of confirmation treated the mortgage as a valid incumbrance. It was too late for the purchaser to take a contrary position after he had acquired the prop-

erty "upon the terms and conditions, and subject to the obligations," offered by the receiver, accepted by himself, and confirmed by the decree of the chancellor.

The learned judge below in his opinion well said:

"In buying subject to the mortgage, the complainant got the property for so much the less than he would have been obliged to pay had it been sold freed from the incumbrance, and for the same reason the receiver of the corporation obtained a smaller sum for distribution among the creditors."

We think that this case clearly comes within the principle of the decision of the court of errors and appeals of New Jersey in Warwick v. Dawes, supra. Very pertinent here is the remark of Chief Justice Beasley in that case, that if the purchaser can succeed in defeating the mortgage "it is painfully obvious that he is allowed to violate the condition on which he acquired this property, as such condition was understood and consented to by himself and by all the other parties interested."

Under the circumstances, the demand of the complainant to have the Halliday mortgage avoided because the mortgagor corporation was insolvent when it was given is utterly destitute of equity. Neither as purchaser nor in virtue of his right of subrogation to the judgments of the banks is the complainant entitled to such relief. He bought and holds the property subject to those judgments as well as subject to the Halliday mortgage.

We are of opinion that the dismissal of the bill of complaint was right, and accordingly the decree of the circuit court is affirmed.