Robert Strong, Appellee, v. Richard Burden and Mary A. Burden, Appellants.

Gen. No. 9,574.

at the October term, 1940. Heard in this court Opinion filed July 9, 1941.

MYRON C. ROGERS, of Morrison, for appellants.

EVAN A. GILCHRIST, of Walnut, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
A judgment, by confession, in the sum of $1,620.72 was obtained by appellee against appellants in the circuit court of Whiteside county on April 11, 1939. The judgment was based upon three notes executed by appellants, each note being dated September 1, 1931, and each payable to the order of the First National Bank of Erie, Illinois, and each bearing the following endorsement: "October 4, 1938. Without recourse and without warranty, we assign and sell this note to Robert Strong of Earlville, Illinois. The first Na-

tional Bank of Erie, Illinois, by John A. Thompson, Receiver.'' Upon motion of the defendants this judgment was opened up and the issues made by the pleadings were submitted to the court, without a jury, for determination resulting in an order reducing the original judgment in the sum of $68.57 and reinstating it as of the date of its rendition for $1,552.15. To reverse this judgment order the defendants have appealed.

The evidence discloses that prior to April 29, 1935, the comptroller of the currency appointed a receiver for the First National Bank of Erie and on that day the receiver so appointed, filed his petition in the circuit court of Whiteside county for an order praying that court to take jurisdiction of said receivership for the purpose of entering petitions and orders authorizing the receiver to sell real and personal property belonging to the bank and to take any other action requiring an order of court of general equity jurisdiction in the administration of such receivership which may be presented to the court by said receiver. On that day an order was entered by the court in accordance with the prayer of said petition, and subsequently, an order was entered recognizing the appointment of John A. Thompson, as successor receiver, and directing that all further petitions and orders therein should be designated under the heading ''In the matter of John A. Thompson, as receiver of the First National Bank of Erie, Erie, Illinois.'' Thompson qualified as receiver and commenced to act as receiver on April 15, 1938 and was acting as receiver at the time of the hearing. On July 28, 1938 he notified the comptroller's office that the assets remaining in his hands would be offered for sale on September 15, 1938, and he advertised that sale for three successive weeks in a newspaper published weekly in Erie, Illinois. On the day and place as advertised, he, the receiver, announced the terms of the sale and stated that the sale would be subject to

the approval of the comptroller and of the court, and at the sale the plaintiff bid $1,259 for all the assets offered and paid the receiver one-third of his bid and received from the receiver a receipt therefor. Thereafter the comptroller of the currency was advised of this proceeding by the receiver and on September 24, 1938, he authorized the receiver to petition the court for an order permitting the receiver to accept not less than $1,259 as the purchase price of the assets included in the sale. On October 3, 1938, such a petition was filed by the receiver in the circuit court of Whiteside county and on the same day an order was entered approving the sale to the plaintiff and directing the receiver to assign and deliver to the plaintiff the assets he had purchased upon the payment to the receiver of the balance of the purchase price. This order, among other things, recited that the remaining assets of the bank had been sold at public auction by the receiver pursuant to notice thereof as directed by the office of the comptroller. Thereafter, the plaintiff paid the receiver the balance of the purchase price, and he delivered to the plaintiff the assets so purchased, among them being the three notes executed by the defendants, upon which judgment was rendered herein on April 11, 1939.

Section 191, Title 12, USCA authorizes the comptroller of the currency whenever he becomes satisfied of the insolvency of a national bank to appoint a receiver who shall proceed to close up the bank and enforce the personal liability of the shareholders as provided by section 192. Section 192 provides: "Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every kind and description of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and

personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders.''

Numerous cases are cited by counsel for appellants to sustain their contention that no valid sale of the notes upon which this judgment is based could be had unless the receiver, prior to the sale, obtains an order of a court of competent jurisdiction authorizing the sale. We have examined all of the cases cited and while expressions are found in some of them so indicating, still none of them decide the question involved herein. For instance, in *Tourtelot v. Booker,* a case decided by the Texas Court of Civil Appeals and reported in 160 S. W. 293, it appeared that on August 27, 1897, the District Court of North Dakota rendered a judgment in favor of E. C. Tourtelot, receiver of the Grand Forks National Bank of Grand Forks, North Dakota, and against L. E. Booker for $31,261.19. It further appeared that after the judgment was obtained in North Dakota, Tourtelot resigned as receiver and W. B. Wood was appointed as his successor and qualified and thereafter sold said judgment and by due course of assignments the plaintiffs, Tourtelot and Hogan, became the owners thereof and brought suit in the District Court of El Paso county, Texas, to recover thereon. It further appeared that the receiver had presented a petition to, and obtained an order signed by a judge authorizing the receiver to dispose of the remaining assets of the bank, but this petition and order were never filed in the clerk's office of the court and never became a part of the records of any court. In its opinion affirming a judgment for the defendant, the Texas Court of Civil Appeals referred to the foregoing provisions of the United States Code and stated that before a sale of assets of an insolvent bank is authorized, an order of a court of record of competent jurisdiction

must be had and obtained and that such an order is a necessary prerequisite before any sale of the assets of a bank can be made by the receiver. That case, however, is distinguished from the instant case in that in the Tourtelot case there was no attempt to comply with the provisions of the statute. No order was obtained from any court authorizing a sale to be made, approving a sale that had been made, or directing the receiver to accept an offer which he had received. In none of the other cases cited and relied upon by appellants does it appear, as it does in the instant case, that an order was entered approving and confirming the action of the receiver in receiving bids and directing him to accept the offer and deliver the assets to the purchaser upon full payment of the purchase price.

In the instant case, although no petition was filed or any order obtained from a court prior to the time the auction sale was conducted, the provisions of the statute were in fact complied with inasmuch as the receiver, before he endorsed and transferred the notes of appellants to appellee did procure an authorization so to do from the court. All of the authorities are to the effect that Mr. Thompson, the receiver, is not an officer of the circuit court of Whiteside county, but an agent and officer of the executive branch of the government and that an application by him to the court for authority to sell the assets in his hands is an *ex parte* proceeding in which the court is vested with a discretion to authorize or refuse to authorize a proposed sale by the receiver or to approve or refuse to approve a sale made by him.

In *Fifer v. Williams*, 5 F. (2d) 286, it appeared that the District Court of Montana, upon the petition of the receiver of the First National Bank of Fergus county, Montana, authorized the receiver to sell all of the assets of that bank to a new national bank to be organized at Lewistown, Montana. Certain credi-

tors prosecuted an appeal to the Circuit Court of Appeals of the Ninth Circuit which court dismissed the appeal, holding that there is no statutory provision authorizing an appeal from an order authorizing the sale of the assets of an insolvent national bank. In its opinion, the court stated that under the authorities a receiver of an insolvent national bank is not the officer of any court, but an agent and officer of the United States, that under the statute, whenever he deems it desirable to sell or compound bad or doubtful debts, it devolves upon him to procure the order of a court of competent jurisdiction, nevertheless, the funds collected are disbursed by the comptroller, and that by making an application to the district court, the receiver did not thereby submit himself and the affairs of the bank to the jurisdiction of that court. The court further stated that the receiver belongs to the executive branch of the government and his custody of the assets is not that of the court, and that the procedure outlined by the statute did not provide for a trial in court, or contemplate that an objecting creditor could litigate with the receiver the questions as to the advisability of disposing of the assets of the insolvent institution. Continuing the court said: "There is no suit; no parties in the legal understanding of the term; no process must issue; no one is authorized to appear on behalf of the receiver or anyone else, or to subpoena witnesses. It is an ex parte proceeding, and, though by the will of congress put under judicial cognizance, is not by its own nature a judicial controversy." In *Armstrong v. Woolley,* 89 F. (2d) 295, the court held that where the sale of land by a receiver of an insolvent national bank was not authorized by precedent order of court and was not approved by a subsequent order, an agreement between the receiver and prospective purchaser was not consumated and could not be enforced by the prospective purchaser. To the same ef-

fect is *Whelan v. Blankenbeckler,* 87 F. (2d) 81, where it is said: "It must be borne in mind that the receiver of an insolvent national bank is an agent whose authority is limited by law. In no event can he sell land without an order of court approving the contract of sale. (Citing cases.) A person dealing with such receiver in his official capacity is presumed to have knowledge of his authority to act. *Ellis v. Little,* 27 Kan. 707, 41 Am. Rep. 434; *Beckham v. Shackelford* (Tex. Civ. App.) 29 S.W. 200. The federal District Court where the insolvent bank is located is vested with jurisdiction to approve or disapprove the sale of its real or personal property."

In *Davidson v. Whitfield,* 186 Okla. 536, 99 P. (2d) 156, it was insisted that a conveyance by the receiver of the First National Bank of Berwyn, Oklahoma, was void, it having been executed without any previous order of the Federal court having jurisdiction over the sale of the assets of that insolvent bank. The court stated that in view of the conclusion it had arrived at upon another feature of the case, it was not certain that it was necessary for it to determine the sufficiency of the conveyance of the receiver, yet it did so, and in the course of its opinion said: "It is shown that the receiver had authority from the Comptroller of the Currency to dispose of the bank's assets; the sale was reported to the Federal District Court by petition of the receiver in which he asked for approval of the sale and for an order, which was entered, confirming the sale. On this record the deed was issued in October 1934, nearly four years before the commencement of the present action. Appropriate here is the rule stated in 53 C. J. 216, sections 352, 353: 'In general confirmation of a receiver's sale by the court having charge of the receivership cures all defects and irregularities in the sale and in the proceedings preliminary thereto except such as are founded on fraud or want of jurisdiction, and renders the sale final and

binding. Confirmation over an objection renders the matter res judicata as to the objecting party. Even though a receiver has made a sale of property of the estate without first procuring authority from the court so to do, confirmation of such sale by the court will ordinarily be regarded as tantamount to a previous authorization or direction. It has been held, however, that where timely objection is made to a sale on the ground that the receiver had no authority to make it, and that it is accordingly void, an order of confirmation made over such objection cannot take the place or answer the purpose of proper authorization or direction in advance.' Ordinarily the court's decree confirming all that the receiver has done is equivalent to a previous direction. *Richards v. Halliday et al.,* 3 Cir., 112 F. 86. 50 C. C. A. 133; *First National Bank of Tulsa et al. v. Colonial Trust Co. et al.,* 66 Okla. 106, 167 Pac. 985; *Armstrong v. Woolley,* 5 Cir., 89 F. 2d 295; *Whelan v. Blankenbeckler,* 5 Cir., 87 F. 2d 81. The provisions of the National Banking Act, 12 USCA Sec. 21 *et seq.* providing for the disposition of assets of an insolvent national bank are entitled to liberal interpretation to promote the speedy winding up of the affairs of the bank. *Korbly, Receiver v. Springfield Institution for Savings et al.,* 245 U. S. 330, 38 S. Ct. 88, 62 L. Ed. 326; *In re Bank of San Pedro,* 1 Cal. 2d 675, 37 P. 2d 80. An examination of authorities on the point submitted by the plaintiff shows that in practically every case there was an absence of an order approving the sale. The cases relied upon are not fairly in point.''

The conduct of the receiver in the instant case, as disclosed by this record, must be considered under all the authorities to be equivalent to procuring in advance an order from the court directing a sale. The court was apprised of all the facts. The court had jurisdiction and there was no fraud. The spirit of the

applicable statutory provisions was observed and appellants cannot complain.

Nor is there any merit in appellants' contention that they were deprived of a jury trial. Section 64 of the Civil Practice Act provides that a defendant desiring a trial by jury shall file a demand in writing at the time of filing his appearance. Rule 26 of the Supreme Court provides that issues in a case where a judgment by confession is opened up shall be tried by the court without a jury unless a jury is demanded at the time of the entry of the order opening the judgment. In the instant case the order opening up the judgment was entered on June 23, 1939. The demand for a jury was filed by appellants on June 28, 1939.

The order appealed from will be affirmed.

*Order affirmed.*