CHRONOWSKI *v.* PARK-SPROAT CORPORATION.

CLAIM OF PAULSON.

1. APPEAL AND ERROR—FINDING OF COURT—RECORD—HOTEL SPECIALIST—COMMISSIONS—RECEIVERS.

On appeal in proceeding by nonresident who specialized as a consultant in the operation, management, leasing and liquidating of hotels to recover for services rendered receiver of corporate hotel owner, record supported finding of trial court that claimant's activities had been authorized, were warranted, and had materially benefited the estate and value of the stock of the corporation.

2. RECEIVERS—CONTRACTS—RATIFICATION—EVIDENCE.

Ratification of a receiver's contract may be shown by proof of knowledge on part of court of the making of the contracts and acquiescence therein.

3. SAME—CONTRACTS—RATIFICATION.

The reasonable contract of a receiver made without previous authority, in good faith and apparently for the benefit of his trust, one which would have been authorized had previous consent been sought, will generally be ratified and when so approved it is as legal and binding as if the court had expressly authorized it in advance.

4. FRAUDS, STATUTE OF—BROKER'S COMMISSIONS—HOTEL LEASES.

Letters and telegram addressed by receiver of corporate hotel owner to claimant for services rendered in negotiating a proposed but unapproved lease of defendant's hotel property, together with receiver's petition for instructions and authority regarding leases and mortgage stating amount for which claimant was justly entitled to payment as commission were sufficient to take the case out of the statute of frauds (3 Comp. Laws 1929, § 13417).

5. RECEIVERS—POSSESSION.

Possession of property by a receiver is possession by the court appointing him.

6. BROKERS—LICENSES—RECEIVERS—COMMISSIONS.

Consultant in the operation, management, leasing and liquidating of hotels who had been engaged by receiver of corporate hotel owner, who was a licensed real estate broker in another State but not in this State, was not therefor precluded from acting as broker in this State on behalf of receiver of corporate hotel owner and recovering for services rendered since he was acting under the general supervision of the court (2 Comp. Laws 1929, § 9807, as amended by Act No. 268, Pub. Acts 1939).

BOYLES, C. J. and WIEST, J., dissenting.

Appeal from Wayne; Jayne (Ira W.), J. Submitted June 17, 1943. (Docket No. 74, Calendar No. 42,424.) Decided October 11, 1943.

Bill by Joseph Chronowski against Park-Sproat Corporation for appointment of a receiver. On

petition of Edward Paulson for compensation for services as broker. Order entered fixing compensation. Defendant appeals. Affirmed.

*Friedman, Meyers & Keys* (*Joseph H. Jackier*, of counsel), for plaintiff.

*Frederick McGraw*, for defendant.

SHARPE, J. This is an appeal by defendant corporation from the allowance of $5,000 to Edward Paulson, a Chicago real estate broker, for services rendered to the receiver of defendant corporation in negotiating a proposed, but unapproved, lease of defendant's hotel property.

This cause originated in a bill of complaint filed in 1933 by a minority stockholder praying for the appointment of a receiver of the Park Avenue Hotel in Detroit, Michigan. Other stockholders intervened and all parties asked that a receiver be appointed. On June 30, 1933, Judge V. M. Brennan appointed Julius Berman receiver. The order appointing the receiver provided:

"That said receiver shall forthwith enter into the possession, control and management of certain property of the said Park-Sproat Corporation, a Michigan corporation, known as Park Avenue Hotel, and that in connection with the said management of the said hotel said receiver is specifically authorized to employ and discharge all individuals as to him appears necessary for the proper operation of the said hotel, to make necessary purchases and contracts for purchase of produce and hotel supplies, and to make such repairs to the premises as to the said receiver shall appear necessary and desirable for the proper maintenance and continuance of the business, and to do each and every thing as in the opinion of said receiver is

desirable, proper and necessary to the proper continuance of the hotel business and the preservation of the assets of the said Park-Sproat Corporation, a Michigan corporation, and to make the necessary contracts in connection with the management and control of said property, which in no event shall exceed the duration of said receivership, all subject, however, to the approval and ratification by this court.''

At the time of the appointment of a receiver, proceedings were pending to foreclose the mortgage on the hotel property, which amounted to approximately $165,000. By intervention of the receiver, moratorium relief was granted. In December, 1935, the receiver filed a petition for instructions and on July 2, 1936, Judge Brennan entered an order authorizing the receiver to execute a lease with Kilborn Management Company. The lease required the lessee to pay all taxes, special assessments, interest at five per cent. per annum on the mortgage, insurance premiums, and rent at the rate of $5,000 for each of the first and second years and $10,000 per year for the next six years. The interest rate for the last four years was to be five and a half per cent. and all rentals were to be paid to the mortgagee for the account of the receiver. The lessee was also required to loan the receiver $17,000 until July 1, 1947, without interest until July 1, 1944, and with interest after said date at the rate of five per cent. per annum. The lessee was required to make all repairs necessary to maintain the premises in the same condition as when taken. The lessor reserved the right to terminate the lease at any time after the first year and during the first four years upon payment to the lessee of $15,000, and during the last four years, upon payment of $10,000 to the lessee.

Toward the end of the fourth year of the lease, real estate conditions in Detroit had improved and the receiver sought to interest local people in an attempt to obtain a lease that would be more advantageous to the receivership estate. During the latter part of 1939, the receiver consulted with Edward Paulson who specialized as a consultant in the operation, management, leasing and liquidating of hotels for the purpose of interesting him in the Park Avenue Hotel. Mr. Paulson was a licensed real estate broker of Chicago, but was not licensed in Michigan. Paulson came to Detroit to inspect the premises and thereafter undertook to interest various persons in the hotel. He brought a number of persons to Detroit and included among them was one Samuel Rautbord who made a proposal to lease the hotel on terms more advantageous to the receivership estate than those of the existing Kilborn lease. In July, 1940, a hearing was had on the Rautbord proposal at which time Kilborn offered to match the Rautbord proposal. During the course of the hearing, the proceedings were interrupted and stayed through intervention of a Federal court receivership. In January, 1942, the Federal court receivership was dismissed and the receiver again contacted Paulson and requested him to come to Detroit to assist in getting a better lease for the hotel.

On February 11, 1942, a Mr. Spare, through the efforts of Paulson, presented a proposal to rent the hotel on terms favorable to the receivership estate. The Spare proposal resulted in Kilborn offering to match it. Eventually, Spare offered to pay a rental of $32,000 per year coupled with an offer to purchase the hotel within two years at a price of $270,000.

At this juncture in the affairs of the hotel property, the stockholders advised the circuit judge that they would like to have the property turned back to the corporation. Judge Jayne advised the stockholders that he would terminate the receivership on condition that the stockholders advance sufficient moneys to pay off all receivership claims, including Paulson's claim. In distributing the money advanced by the stockholders, the court ordered $5,000 to be paid to Edward Paulson for his services and, in his opinion, stated:

"We find as a fact that the petitioner's activities and those of his client materially benefited the estate and the value of the stock of the corporation which now objects to his compensation. We find further as a fact that the petitioner's services were secured by the receiver and that his actions in so doing were approved by this court repeatedly and are now again approved as within the proper duty of the receiver. We find further as a fact that the reasonable value of the services rendered is $5,000."

Defendant corporation appeals from this order and urges that claimant's services were neither necessary nor beneficial. We are in full accord with the finding of facts by the trial judge that "the petitioner's activities and those of his client materially benefited the estate and the value of the stock of the corporation." The record amply supports such a conclusion.

Nor are we impressed with the objection that claimant's services were neither authorized nor warranted. The trial court at all times knew that claimant had been employed by the receiver. The order appointing the receiver authorized him "to do each and every thing as in the opinion of said

receiver is desirable, proper and necessary to the proper continuance of the hotel business and the preservation of the assets of the said Park-Sproat Corporation.''

In 16 (1942 Rev.) Fletcher on Corporations (Perm. Ed.), pp. 362, 363, in connection with the power of the court to ratify a receiver's contract, it is said:

"Moreover, though no previous authorization be granted, there may be a ratification, sufficiently indicated by other proceedings in the case, showing that knowledge was possessed by the court of the making of the contracts, and acquiescence therein."

In 53 C. J. pp. 158, 159, it is said:

"The general rule against such contracts or expenditures without the previous authority of the court should not be rigidly and sternly enforced so as to work wrong and injustice, where the receiver has acted in good faith and under such circumtances as will enable the court to see that if previous authority had been applied for it would have been granted, * * * under the modern practice the court will give its subsequent approval when the receiver has made a reasonably proper contract * * * in good faith, and what he has done appears to have been for the benefit of the trust. * * * A subsequent ratification of a receiver's contract by the court makes it as legal and binding as if the court had expressly authorized it in advance."

It is next urged by defendant company that the claim was barred by the statute of frauds. * Claimant submits that the following written memoranda, signed by the receiver, is sufficient to satisfy the statute of frauds:

---

* See 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922).—RE-PORTER.

"May 23, 1940.

"Mr. Edw. Paulson,
"120 S. LaSalle Street,
"Chicago, Ill.
"*Dear Sir:*

"I am in receipt of your proposal of May 20, 1940, to lease the Park Avenue Hotel.

"This offer is acceptable to me as receiver of this hotel and you may consider this letter as an acceptance of the proposal subject to the following: That this matter must be submitted to the circuit court for the county of Wayne for approval, which approval of course will be predicated on a hearing to be had, at which hearing all interested parties will be present in order to express their views.

"It is my intention to recommend the acceptance of your proposal at this hearing.

"Yours very truly,
"Julius Berman,
"Receiver of Park-Sproat Corp."

"1942 Mar 11 PM 819 *    *    *

"Edward Paulson,
"120 So. LaSalle St. Chgo.

"Will be home Tuesday seventh you can be sure I will not recommend Kilborn under any circumstances in any event your commission is assured regardless who gets the deal I do not think Kilborn can raise the necessary cash he has only offered ten thousand additional.

"Julius Berman."

"March 12, 1942

"Mr. Edward Paulson
"120 S. LaSalle, Suite 1847,
"Chicago, Ill.

"Re: Park Avenue Hotel.

"*Dear Mr. Paulson:*

" * * * For your information, Judge Brennan has taken the position that in the event the lease is given to Kilborn, you are not to be ignored, and his

present thought is because you did create the situation that improved the value of this estate, you should be entitled to get at least one-half of your commission. That was his informal statement to me. What he will do at the hearing, I don't know, but you may rest assured no matter who gets the lease, you will get some compensation.   *   *   *

"Yours very truly,
"David I. Hubar."

It is to be noted that the above memoranda fails to state any specific amount or rate of pay, but in the receiver's petition of April 2, 1942, for instructions and authority regarding leases and mortgage, we find the following:

"That in the negotiations for the proposed lease, one Edward Paulson, a licensed real-estate broker, has acted as agent, and in the opinion of your petitioner is justly entitled to the payment of a commission in the amount of $5,000 for negotiating said transaction, and that in the event of the approval of the request of your petitioner for leave to enter into said lease, this court likewise approve payment to said Edward Paulson of his commission as aforesaid."

In *Bagaeff* v. *Prokopik*, 212 Mich. 265 (17 A. L. R. 1292), plaintiff began a suit on a promissory note given by defendant to pay for past broker's fees when the original agreement was void under the statute of frauds. We there held that though the original contract was void because of the statute of frauds, the services rendered and the moral obligation to pay was sufficient consideration to support a subsequent promise to pay.

In the case at bar, the receiver's petition disclosed the amount with which the receiver was to be charged. In our opinion the written memoranda together with the acknowledgment as mentioned in

the receiver's petition was sufficient to take the case out of the statute of frauds.

It is next urged by defendant corporation that Paulson's claim is barred by Act No. 306, § 1, Pub. Acts 1919 (2 Comp. Laws 1929, § 9806 [Stat. Ann. § 19.791]), which prohibits persons from acting as real-estate brokers or salesmen within this State without first obtaining a license under the provisions of the act. Section 2 of the above mentioned act (2 Comp. Laws 1929, § 9807, as last amended by Act No. 268, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 9807, Stat. Ann. 1942 Cum. Supp. § 19.792]) provides in part:

"The provisions of this act shall not apply to * * * nor shall it be held to include a receiver, trustee in bankruptcy, administrator or executor, or any person selling or appraising real estate under order of any court."

It is well-settled law in Michigan that when a receiver has taken possession of property, such possession is that of the court itself. See *Uhl* v. *Wexford Company*, 275 Mich. 712. It is clear that it was the duty of the court to manage or dispose of the property for the best interests of all concerned. The court had general supervision of the acts of the receiver and at all times had knowledge that Paulson was acting for and in behalf of the receivership estate. We think that under such circumstances, Paulson was acting under the general supervision of the court and comes within the exceptions mentioned in section 2 of the above act.

The order of the trial court is affirmed, with costs to claimant.

CHANDLER, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred with SHARPE, J.

BOYLES C. J. (*dissenting*). The claim for broker fees should be denied. The question is squarely presented to us whether a nonresident real estate broker who is licensed to act as a real estate broker in another jurisdiction but not in and by this State can collect a fee or commission for acting as a real estate broker in this State. In this case is the additional circumstance that the nonresident was orally employed to act as a broker, by a receiver appointed by the circuit court.

The pertinent provision of our statute 2 Comp. Laws 1929, § 9807, as amended by Act No. 268, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 9807, Stat. Ann. 1942 Cum. Supp. § 19.792), regulating and licensing real estate brokers and salesmen defines a real estate broker as follows:

"A real estate broker within the meaning of this act is any person, * * * who with intent to collect or receive a fee, compensation or valuable consideration, * * * leases or offers to lease or rents or offers for rent any real estate or the improvements thereon for others, as a whole or partial vocation. * * * The provisions of this act shall not apply to any person, * * * who has been appointed by court, (who) shall perform any of the acts aforesaid with reference to property owned by them, unless performed as a principal vocation not through brokers duly licensed hereunder, nor shall this act be * * * held to include a receiver, * * * or any person selling or appraising real estate under order of any court."

Edward Paulson claims a fee or commission for his efforts toward obtaining a lease for property in possession of the receiver—an act expressly coming within the above definition of a real estate broker. He had not been appointed by any court; he was not performing the acts for which he seeks

compensation under order of any court; no court had ordered, authorized or directed the receiver to employ him. I cannot consider any informal off-the-record talk between the circuit judge and the receiver as amounting to an order of the court, authorizing an unlicensed individual to act as a real estate broker in this State. The statute speaks of "order of any court." Even without that, courts speak through orders, judgments and decrees, not off-the-record conversation subject to the hazards of faulty recollection. A real estate broker cannot be licensed to do business in this State in such a manner. Paulson, with many years' experience as a licensed broker in another State, must have known he could not act as such, in this State, contrary to the express provisions of our statute. He does not come within any of the pertinent exceptions to the statutory definition of a real estate broker.

Section 1 of this act (Act No. 306, Pub. Acts 1919, as amended [2 Comp. Laws 1929, § 9806 *et seq.*, (Stat. Ann. § 19.791 *et seq.*)]) declares it shall be unlawful for any person to engage in the business *or capacity* of a real estate broker within this State without first obtaining a license under the provisions of the act. The claimant did not obtain such license. He was acting in the capacity of a real estate broker in this State in obtaining a lease—a single transaction. Section 3 of the act, as amended by Act No. 268, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 9808, Stat. Ann. 1942 Cum. Supp. § 19.793), provides:

"The commission of a single act prohibited hereunder shall constitute a violation."

Claimant had previously negotiated several real estate transactions in Michigan in 1940, 1941 and 1942. The act does not require that one must "en-

gage in the business" in this State to become subject to the requirement to obtain a license. Cases cited by counsel to the contrary, decided before the 1937 amendment to the act,* now have no application.

Section 16 of the act † (Comp. Laws Supp. 1940, § 9821, Stat. Ann. 1942 Cum. Supp. § 19.806) allows nonresidents to become real estate brokers and requires them to obtain a real estate broker's license in this State. A nonresident must file an irrevocable consent that suits and actions may be commenced against him in this State by service of process on the commissioner of the Michigan corporation and securities commission. This plaintiff had not done so.

This is a penal statute. Section 19 of the act (2 Comp. Laws 1929, § 9824 [Stat. Ann. § 19.809]) provides for a fine or imprisonment for violating the provisions of the act. In *Morris* v. *O'Neill,* 239 Mich. 663, 666, this court indicated that failure to obtain a real estate broker's license precludes recovery on a contract for a commission. At page 666 of that opinion, quoting with apparent approval, this court said:

"In 2 Mechem on Agency (2d Ed.), p. 2091, § 2479, it is said:

" 'Where a statute or ordinance requires brokers to be licensed, and forbids, imposes a penalty for, or otherwise makes unlawful, the exercising of the vocation without a license, it is generally held that an unlicensed broker cannot recover either upon the contract or upon a *quantum meruit* for services rendered by him in that capacity.' "

That the oral contract on which claimant seeks recovery is a Michigan contract, to be performed in

---

* Act No. 188, Pub. Acts 1937.—REPORTER.
† As amended by Act No. 268, Pub. Acts 1939.—REPORTER.

this State, is not seriously disputed. *State of Ohio, ex rel. Superintendent of Banks,* v. *Eubank,* 295 Mich. 230.

The facts in this case are not in dispute. On this record, Paulson cannot recover compensation.

The case should be reversed for entry of decree denying the claim and remanding for further proceedings in the receivership in accordance herewith, with costs to appellant.

WIEST, J., concurred with BOYLES, C. J.