Herbert W. ANDERSON, as Receiver of United America Insurors and United America Development Corporation, Appellant,

v.

J. D. ARMSTRONG, Appellee.

No. 2–60122.

Court of Appeals of Iowa.

Jan. 31, 1978.

E. Eugene Davis and Wendell B. Gibson, of Davis, Scott & Grace, Des Moines, for appellant.

C. A. Pasley, of Pasley, Singer, Pasley & Holm, Ames, for appellee.

Submitted to ALLBEE, C. J., and DONIELSON, SNELL, OXBERGER and CARTER, JJ.

CARTER, Judge.

This is an action in equity seeking specific performance of an alleged contract for the sale of the vendee's interest in three real estate contracts. The plaintiff is the Insurance Commissioner, acting as receiver of an insolvent insurance company which owned the interest in real estate with which we are concerned.[1] The defendant is an individual who submitted a written offer to the receiver to purchase the vendee's interest in these land contracts for the sum of $14,875. The trial court dismissed the action as a result of a finding that, prior to any acceptance of defendant's offer, the receiver had rejected it thus rendering it inoperative as a matter of law. This appeal involves our de novo review of the evidence supporting that finding as well as other factual and legal issues which we must decide in order to adjudicate the controversy.

I. In this equity action we give weight to the findings of the trial court but are not bound thereby and cannot abdicate our responsibility to determine the facts de novo. Rule 4, Rules of Appellate Procedure; *White v. Board of Review of Polk County*, 244 N.W.2d 765, 772 (Iowa 1976). Upon our review of the entire record we differ with the result reached in the court below.

II. Defendant denies the formation of the contract upon which plaintiff's claim rests. We perceive the issues going toward the making of the contract, if any, to be as follows:

(a) Whether defendant's written offer to purchase this interest in real estate was rejected by the receiver prior to any acceptance thereof. If this is answered in the affirmative we must affirm the trial court as this would render the pending offer inoperative under established law [2] and there is no evidence that defendant made a new offer subsequent to the time he claimed plaintiff rejected his first and only offer;

(b) if issue (a) above is answered in the negative, we must then determine on the evidence presented whether it has been established that plaintiff or his authorized representatives accepted defendant's offer to purchase said interest in real estate prior to the time it was withdrawn by defendant.

A. **Was the offer rejected by plaintiff prior to its acceptance by defendant**? This issue presents a difficult question as to which party bears the burden of proof thereupon under the established rules for determining such burden. Rule 14(f)(5), R.App.P. recognizes that ordinarily the burden of proof on an issue is upon the party who would suffer loss if the issue were not established. In the present controversy, however, this depends upon how several

---

1. The vendee's interest in the three contracts was held in the name of a wholly owned subsidiary of the insolvent insurance company which was in receivership but the receiver established that at all times material he was able to convey this interest through the receivership and could secure the necessary dissolution of the subsidiary or conveyance therefrom in accordance with the wishes of defendant's attorney. No issue has ever been raised contesting his ability to do so.

2. Restatement, Law of Contracts § 35(1)(a); 17 Am.Jur.2d, Contracts § 39.

other factual issues in the case are resolved. While the issue is not free from doubt, we prefer to place the burden of proof upon the plaintiff. Considering the entire record in this light we conclude that the evidence preponderates against the claim that plaintiff rejected defendant's offer prior to accepting it.

■ Defendant contends that such rejection was voiced to him on March 11, 1975, during a telephone conversation with F. M. Wonderlin, a deputy receiver appointed by the court. Considering all of the evidence as to what was said during this conversation, the status of Mr. Wonderlin as an officer of the court, his authority to act or the lack thereof, and other circumstances surrounding the transaction we find that while Mr. Wonderlin expressed surprise that the written offer to buy was for a lesser sum than discussed in earlier oral discussions, he nevertheless did not reject such offer. He instead sought during this telephone conversation to obtain defendant's reasons for the reduced offer so he could take the matter up with his counsel and the court. Such finding dictates that we cannot decide the case adversely to plaintiff on the ground relied upon by the trial court.

■ **B. Was it established that plaintiff's authorized representatives accepted defendant's offer to purchase the interest in real estate before said offer was withdrawn?** Plaintiff bears the burden of proof on this issue also and we conclude he has satisfied said burden by clear, satisfactory and convincing evidence. It is well established that although a party making an offer may specify how it shall be accepted, failing this anything that amounts to a manifestation of the determination to ac-

cept is sufficient, including an oral response.[3] We find that an oral acceptance of defendant's offer was timely communicated to him by Mr. Wonderlin by telephone on March 11, 1975, and that Mr. Gibson, attorney for the receiver, confirmed this in a subsequent telephone call to defendant seeking information as to the desired form of conveyance. We further find that based upon these conversations a meeting to close the transaction was scheduled for March 13, 1975, at 11:00 a. m.

Defendant failed to show up for this meeting. Mr. Wonderlin then telephoned him at 11:45 a. m. and when he asked defendant why he was not present for the closing, defendant stated he was not going to complete the transaction. Upon our review of the evidence we find that defendant had not communicated a withdrawal of his written offer to plaintiff's representatives prior to their acceptance thereof as found by this court. The only evidence that the offer was withdrawn is defendant's testimony that this was the substance of his first telephone call with Mr. Wonderlin on March 11, 1975. But based upon all of the evidence, including our finding as to the scheduled closing,[4] we find that the offer was not withdrawn at any time prior to the 11:45 a. m. telephone conversation on March 13, 1975. This of course was subsequent to the time the offer had been accepted by the receiver's representatives.

■ While the foregoing findings would ordinarily establish a valid contract for purpose of plaintiff's claim without further discussion, defendant raises one additional point which we must consider. This is the contention that court authorization on behalf of the receiver to accept defendant's offer was not obtained until 11:04 a. m. on March 13, 1975 and that any action of the

---

3. *Figge v. Clark*, 174 N.W.2d 432, 435–36 (Iowa 1970); *Siebring Mfg. Co. v. Carlson Hybrid Corn Co.*, 246 Iowa 923, 930, 70 N.W.2d 149 (1955). Acceptance by telephone is governed by principles applicable to oral acceptances generally. 17 Am.Jur.2d Contracts § 53; Restatement, Law of Contracts § 65.

4. Defendant, in his testimony, acknowledged that the parties had scheduled the 11:00 a. m.

meeting on March 13, 1975. His explanation of the proposed meeting was that it was to further negotiate the proposed sale. This appears inconsistent with his account of the respective positions of the parties on March 11, 1975, under which there was no area remaining for negotiation. We credit plaintiff's evidence that the purpose of said meeting was to close the transaction.

plaintiff or his representatives in accepting the offer prior to this time was ultra vires. We believe the better rule to be that where a receiver sells or contracts prior to receiving court authorization, a subsequent ratification of the receiver's action makes it as legal and binding as if it had been authorized in advance.[5] We apply this rule in the present case and hold that defendant cannot avoid an otherwise proper agreement on the ground it was ultra vires.

III. We next consider defendant's contention that we cannot order specific performance of the agreement because the receiver is unable to perform. This contention is based upon the assertion that the receiver is presently unable to convey the interest in real estate contracted for because of forfeiture actions undertaken by the vendors of these contracts subsequent to the March 13, 1975, closing date. We find this contention to be without merit. The record clearly reveals that to the extent forfeiture of the vendee's interest in these contracts has been attempted it is based upon failure in payment of the March 15, 1975, principal and interest payments owed on the contracts. In defendant's written offer, which we hold forms the contract between the parties, such payment clearly became defendant's obligation. Accordingly, the receiver's obligation under said agreement was to convey only his right, title and interest in the property subject to the vendor's rights and interest. He is as able to do this now as he was on March 13, 1975.[6]

We accordingly hold that upon remand, plaintiff is entitled to a decree of specific performance of the obligation of defendant to make payment under the written offer of March 7, 1975 (plaintiff's exhibit 4) in the sum of $14,875, plus interest on said sum at the legal rate subsequent to March 13, 1975, in exchange for delivery of the receiver's conveyance of the subject property as provided in plaintiff's exhibit 5.

IV. In so holding we also reject defendant's contention that plaintiff holds an adequate remedy at law as contrary to the established law relating to the specific performance of real estate contracts. *See e. g. Dee v. Collins*, 235 Iowa 22, 24, 15 N.W.2d 883 (1944).

Reversed and remanded.

DONIELSON, J., dissents.

DONIELSON, Judge (dissenting).

I disagree with the result reached by the majority because I would answer the question posed by II. A. of the majority opinion in the affirmative. Although the majority correctly states that the plaintiff has the burden of proof on this issue, rule 14(f)(5), Rules of Appellate Procedure, it fails to take into account the other rigorous legal standards which govern our analysis of this issue. The law is settled that in an action for the specific performance of an oral contract for the conveyance of real estate, the burden of proof is on the plaintiff to prove the existence of the contract by clear, satisfactory and convincing evidence. This does not mean that proof of the contract must be undisputed or to an absolute certainty—reasonable certainty is sufficient. *Vanston v. Rupe*, 244 Iowa 609, 618, 57 N.W.2d 546 (1953); *Hastie v. Van Meter*, 183 N.W.2d 650, 651–652 (Iowa 1971); *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977); *see* 71 Am.Jur.2d *Specific Performance*, § 208 at p. 266 (1973). Further, specific performance will not be ordered by a court of equity where there is vagueness,

5. *See e. g.*, 2 Clark, Receivers §§ 433.3, 492(a); 66 Am.Jur.2d, Receivers, §§ 238, 407; 75 C.J.S. Receivers §§ 174, 244; *Tobey v. Poulin*, 141 Me. 58, 38 A.2d 826 (1944); *Strong v. Burden*, 311 Ill.App. 255, 35 N.E.2d 699 (1941); *Davidson v. Whitfield*, 186 Okl. 536, 99 P.2d 156, 158 (1941); *Chronowski v. Park Sproat Corp.*, 306 Mich. 676, 11 N.W.2d 286, 288 (1943). *Cf. Yetzer v. Applegate*, 85 Iowa 121, 52 N.W. 118 (1892).

6. This result is also consistent with the general rule that circumstances intervening between the execution of a contract and the time an action for specific performance is to be determined by the court will not justify denial of specific performance unless due to the fault of the party seeking specific performance. See Annot. 11 A.L.R.2d 390, 401.

indefiniteness or uncertainty with regard to any of the essential terms of the agreement, *Tri-States Investment Company v. Henryson,* 179 N.W.2d 362, 363 (Iowa 1970). After reviewing the record in this case, I conclude, as did the trial court, that plaintiff did not meet his burden of proof in this respect.

Although the record reflects that the negotiations between the parties culminated in a written offer to purchase made by Armstrong, it is far from clear that an oral contract resulted from those negotiations. F. M. Wonderlin, the Deputy Receiver, testified that on March 11, 1975, he spoke with Armstrong by telephone at least once and possibly twice. Wonderlin stated that during the conversation that transpired the morning of March 11, he informed Armstrong that his offer had been accepted and arranged for an appointment with him on March 13 to close the transaction.

Both the defendant's version and the findings of the trial court differ substantially. Armstrong testified that there were definitely two telephone conversations on March 11 and during the first morning conversation, Wonderlin informed him that he could not accept his offer because of the revised purchase price contained therein. Armstrong also stated that he was then asked to come to Des Moines on March 14 to further negotiate a purchase, but the date was changed to March 13 in a subsequent call that day. According to Armstrong's testimony, he advised Wonderlin during the first conversation on March 11 that he had changed or was in the process of changing his mind about the purchase of the contracts and that, after that call took place, he made a written memorandum indicating Wonderlin's unhappiness with the amount of his offer. Armstrong's office manager listened in on the initial conversation with Wonderlin and verified Armstrong's testimony with regard to the substance of that conversation.

The Receiver's attorney testified that he called Armstrong on March 12 to discuss the details of closing the transaction although Armstrong indicated that he could not recall that conversation. However, the evidence does establish that no written acceptance was ever sent to Armstrong. On the morning of March 13, the Receiver received the court order authorizing the sale, but Armstrong did not appear at the scheduled meeting that day.

According to the trial court's findings of fact, during the initial March 11 conversation, Wonderlin stated that he could not accept Armstrong's offer and that during the second conversation that day, he notified Armstrong that a meeting had been set up for March 13, presumably for the purpose of negotiating price. As a result of these two conversations, the trial court found that the defendant was justified in concluding that Wonderlin did not intend to accept the offer and, therefore, Wonderlin had rejected it.

Although we are not bound by the trial court's findings of fact, we may give them weight in appropriate instances. Rule 14(f)(7), R.App.P. I believe that this case presents just such an instance, especially since the credibility and demeanor of various witnesses giving conflicting testimony were crucial aspects of this case. There is no substantive testimony apparent from this record which justifies this court's action in overruling the trial court. Indeed, the closest thing to substantive evidence is the testimony of Armstrong's office manager which supports the findings of the trial court and contradicts those of this court.

In light of the fact that the trial court was in the best position to observe the demeanor of the witnesses, I would defer to that court's findings of fact and affirm its determination that Wonderlin had rejected Armstrong's offer and the implicit conclusion that plaintiff failed to meet his burden of proof in establishing the existence of an oral contract.