**IN THE COURT OF APPEALS OF IOWA**

No. 14-0097
Filed February 11, 2015

**RANDY MONK,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM MINKS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Martha L. Mertz,
Judge.

        The defendant appeals from the order dissolving his partnership with the
plaintiff and entering judgment in favor of the plaintiff.  **AFFIRMED.**

        William Minks, Mesa, Arizona, pro se.

        Nicholas Sarcone of Stowers & Sarcone, P.L.C., West Des Moines, for
appellee.

        Considered by Vogel, P.J., Vaitheswaran, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, S.J.**

William Minks appeals from an order dissolving his partnership with Randy Monk and entering judgment in favor of Monk in the amount of $30,873.15. He contends Monk breached the partnership agreement or fraudulently induced him to enter into the agreement by misrepresenting his intentions with regard to land purchased by the partnership. He also challenges the amount of the judgment entered.

### I. Background Facts and Proceedings.

The present dispute has its genesis in 1989 when Monk and Minks formed a partnership and purchased approximately nineteen acres of land near Johnston. The evidence shows Minks desired to purchase the land to build earth homes, though he lacked the funds to do so; in contrast, Monk had the finances to secure land, but not the vision or means to develop it. Despite their intentions, the land was never developed or sold.

The parties purchased the land for $120,000 under an installment contract that required a $20,000 down payment and monthly payments of $955.66, with a balloon payment at the end of ten years. Each party paid one half of the down payment, and each agreed to pay one-half of the contract payments and property taxes.

Shortly after purchasing the property, Minks moved into a dwelling housed on it. Minks decided to fix the house, which was largely unimproved and in dilapidated condition, and live in it. Monk agreed to allow Minks to do so, but did not agree to pay any of the cost of repairing or remodeling the structure. Instead, the parties modified their agreement; Minks would purchase the house by paying

two-thirds of the monthly contract payments plus all costs associated with the house. If the house had to be demolished or moved to develop the property, Minks would also bear the cost involved with doing so.

Minks lived on the property for several years and expended at least $23,460 and considerable time repairing it. In the late 1990s, he moved to California and began renting the house. Minks received income from the rental, though in his absence, the house again fell into a state of disrepair.

When the ten-year balloon payment came due in 1999, the parties borrowed $59,950 to make the $50,000 balloon payment and split the remaining money for personal use. The loan provided for payments of approximately $563 per month for a period of fifteen years. Because Minks was experiencing financial difficulties, Monk volunteered to make the monthly payments to the bank with the understanding that Minks would reimburse him for one-half of each payment. Minks thought his obligation to repay Monk was not triggered until the land was sold and as a result, only made sporadic payments to Monk. Minks paid a total of $4100 to Monk between May 1999 and March 2012, while Monk paid the bank $41,384.18 during that same period.

In January 2011, Monk filed a petition seeking to dissolve the partnership and recover Minks's portion of the contract payments. In his answer, Minks alleged Monk breached their agreement to develop the land. He also sought a credit and setoff for the amount he paid in excess of one-half while making two-thirds of the contract payments under the installment contract.

Following trial, the court entered an order dissolving the partnership and ordering the sale of the partnership property, with the profits from the sale to be

equally divided between the parties. The court denied Minks's counterclaim for breach of contract and entered judgment in favor of Monk for the money Minks owed under the terms of their partnership agreement in the amount of $30,873.15.

**II. Scope of Review.**

Actions to dissolve a partnership are reviewed de novo. *Engel v. Vernon*, 215 N.W.2d 506, 512 (Iowa 1974). After reviewing the facts and law, we enter the conclusions we deem proper. *Id.*

**III. Analysis.**

Minks raises several claims related to what he alleges was Monk's deception, fraud, or bad faith in forming the partnership and purchasing the land. He also claims Monk breached his fiduciary duty. None of these claims were pled by Minks in district court. To any extent they may have been raised, the district court did not rule upon them. Therefore, we will not consider them on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Because this is an equity action, it is this court's responsibility to determine the facts of this case de novo. *Anderson v. Armstrong*, 264 N.W.2d 619, 620 (Iowa 1978). As such, we are not bound by the district court's fact findings and we decide the issues anew. *Brede v. Koop*, 706 N.W.2d 824, 826 (Iowa 2005).

Minks contends Monk breached the partnership agreement by failing to develop the Johnston property. In order to prove a breach of contract claim, Minks must show the following:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

With regard to the first two elements of a claim for breach of contract, the evidence shows the parties entered into a contract to purchase land. Paragraph twenty-five of the addendum to that contract states, "It is the intention of the Buyers to Develop [sic] the land." The paragraph goes on to list the sellers' obligations with regard to allowing development. While there are writings that evidence the agreement between the parties regarding their duties to pay for the real estate and the taxes on it, there is no written agreement concerning the partners' duties with regard to developing the land, which is where Minks alleges a breach occurred.

Even assuming the parties had an agreement to develop the land, the evidence is insufficient to show Minks performed under the agreement and Monk failed to do so. While Minks argues Monk's view of the property as an investment shows he had no intention of developing the property, we find considering a property to be an investment is not inconsistent with having a desire to develop it or sell it for development. Regardless, the way Monk subjectively viewed the property is insufficient to establish he breached the

contract. Because there is no evidence any agreement placed the responsibility for developing the property solely in Monk's hands, failure to develop the property in itself is insufficient to show Monk breached a duty. Minks cannot articulate any specific act Monk engaged in or failed to complete that blocked development of the land. Nor can Minks show he performed under the agreement. Because the third and fourth elements necessary to prove breach of contract have not been established, Minks failed to show Monk breached the partnership agreement. Accordingly, we affirm the denial of his counterclaim.

Minks next contends the court erred in finding he purchased the house on the property. He claims he instead paid two-thirds of the monthly contract payments while living in the house in order to pay off his portion of the partnership agreement more quickly. Minks's own correspondence contradicts his claim. The evidence instead shows the parties agreed Minks would pay a larger portion of the contract payments in exchange for the house. Minks was free to renovate it without any contribution from Monk and would own the house with the understanding he was responsible for the cost of demolishing or moving the house if necessary to develop or sell the land. Because we reject this claim, we likewise reject Minks's claim he paid off his share of the property when the installment contract ended. Because Minks is responsible for one half of the payments due under the 1999 loan for the balloon payment, we affirm the judgment entered in favor of Monk in the amount of $30,878.15.

**AFFIRMED.**