L. BAMBERGER & CO., A CORPORATION, PROSECUTOR, v. THE DIVISION OF TAX APPEALS OF THE DEPARTMENT OF TAXATION AND FINANCE, AND CITY OF NEWARK, RESPONDENTS.

Argued January 21, 1948—Decided February 13, 1948.

Before Justices BODINE and HEHER.

For the prosecutor, *Lum, Fairlie & Foster* (*Ralph E. Lum* and *Herbert J. Hannoch*).

For the respondents, *Thomas L. Parsonnet* and *Vincent J. Casale.*

The opinion of the court was delivered by

BODINE, J. The question before the court is the propriety of a real estate assessment of $9,172,900.00 levied for the years 1944 and 1945 upon the department store property of L. Bamberger & Company situate in the heart of Newark, New Jersey. The property is bounded by Market Street, Washington Street, Bank Street and Halsey Street. Upon it is erected a large department store building.

On May 27th, 1946, the president of the company was addressed by the acting secretary of the Board of Assessments and Revision of Taxation of the City of Newark and in reply to that letter on June 5th, 1946, a reply containing the following details concerning the property was mailed:

"Land costs at time of purchase amounted to $2,826,706.47.

"Building construction costs for our three units were $2,602,058.91, $1,385,252.22 and $11,945,637.36. The periods of construction were 1912-1913, 1923-1924 and 1928-1929, respectively.

"Amounts set aside for depreciation each year were as follows:

| | |
|---|---|
| Cumulative to 1929 (1/31/20) ........ ... | $985,475.16 |
| Year 1929 ..... ...... .... : | 477,988.46 |
| 1930 ........................ ... : | 478,579.77 |
| 1931 .... ................ ....... | 481,661.85 |
| 1932 ........................... | 481,788.44 |
| 1933 ........................... | 481,788.44 |
| 1934 ............................ | 491,053.60 |
| 1935 .. ...................... ... | 480,468.48 |
| 1936 ....................... . | 479,155.68 |
| 1937 ......................... | 480,468.48 |
| 1938 ........................ ... | 480,468.48 |
| 1939 ........................... | 489,708.26 |
| 1940 .. ...................... ... | 479,155.68 |
| 1941 ....................... ... | 480,788.76 |
| 1942 ........................... | 480,788.76 |
| 1943 ................. ....... . | 480,788.76 |
| 1944 ................ .... ...... | 479,475.13 |
| 1945 .... .................... | 477,037.63 |
| Total ..................... | $9,166,639.82 |

"Charges to capital investment since buildings were erected were $137,371.97."

Carved out of the block is property owned by the Weiler Estate and leased to the Bamberger's under a long term lease. An application for assessing the property as two separate units was not made in time to enable the city authorities to act for the years in question.

For assessment purposes, the property has been treated for years as in a single ownership, which adds to the difficulties of the Division of Tax Appeals. The Weiler property is treated by the prosecutor as having a value, for taxation purposes, of $700,000.

The petition of appeal sought to have the assessment reduced from $9,172,900 to $7,300,000. This figure is made up of the value of the property owned in fee and sold for $6,750,000 plus the value of the Weiler property.

The weight of the prosecutor's argument is that the sale of the property for $6,750,000 should be adopted as the true value of the property sold. Of course, the constitutional requirement was that the property should be assessed at its true value and it has been repeatedly held that such question could be determined by a fair and *bona fide* sale by private contract. *North Bergen Township* v. *Bergen Boulevard Holding Co.,* 133 *N. J. L.* 569.

It is conceded that the sale price is not necessarily controlling if there be other circumstances which establish that the sale was not a fair and *bona fide* one. It is the contention that the sale in question was such a sale.

There can be little argument that the sale in question was not a fair and *bona fide* one, but there are other circumstances surrounding it which, in our judgment, renders the sale price not controlling in this case.

The sale of the property was closed in December of 1945 to the Aetna Life Insurance Company for a cash consideration of $6,750,000. At the same time there was a lease made from that company to L. Bamberger & Company for the entire premises. The lease is for 22 years to January 31st, 1968, with provision for successive renewals which will carry it on to 2034.

Mr. Faller, the comptroller of R. H. Macy & Co. who owned all the stock in L. Bamberger & Company, testified: "Well, there were several reasons for the sale. It was desirable first for a merchandising company to have as little invested in fixed assets as possible, because the rate of income earned on real estate is much less, in fact, far less than that earned in merchandising. This principle is being recognized on a nation-wide scale as indicated by the sales of different department stores to landlords. * * * In addition to recognizing that principle, we could use the extra working capital in our expansion program. We have recently bought a large department store in San Francisco. We have opened a small one in Ohio, Bowling Green, and are opening three others in the State of Ohio. And we have bought two fairly good sized stores in Georgia and planning another one in South Carolina. We plan also to open one in Jamaica, New York;

White Plains and Brooklyn, New York. And we may open up some additional stores in the State of New Jersey.

"That created one need for the working capital in addition to the fact that we have some heavy funded debt we desire to retire. We recently gained two and a half million dollars worth of notes which Bamberger and Macy jointly owed the Prudential Life Insurance Company. We advertised for the redemption of $10,600,000 worth of 2½% debentures outstanding in the hands of the public as of August first.

"There is still another reason for the sale. We wanted to sell this property because it has depreciated in value due to economic obsolescence. It is a sound financial practice when this has occurred to recognize the loss."

He continued: "Q. How did that factor, as to the Newark store compare with the other stores? A. Well, certain standards for measurement of rents and finally you take the company profit of the L. Bamberger and Company, as matter of public record for the last ten years that profit has not been satisfactory. It is at a high rental cost plus the fact that in its particular location, to attract people to that store it must do a heavy direct mail advertising job. I think the advertising cost of that store is about one per cent. higher than the usual department stores, generally."

The real reason, as stated by Mr. Faller, seems to us to be that aside from obtaining more capital, as a result of bookkeeping entries: "There was a loss of about $3,000,000 and there was a" (federal) "tax saving of about $2,600,000. So even after that there was a loss of $400,000."

In fine, when the transaction is analyzed, it appears that by the transaction the prosecutor obtained working capital and a lease for a long term on the building occupied by it and a reducton in income taxes of about $2,600,000.

We do not think that such a transaction is similar to the sale of property between a willing buyer and a willing seller. It must be regarded in a very different light from one where a willing owner sells to a willing buyer a residence at $10,000. The transaction is more in the realm of financial convenience than a transaction between a simple buyer and a seller. The sale was for the purpose of improving the capital structure with little or no change of occupancy and use.

Apart from this transaction, other proofs in the case establish a value well within the corners of the assessment.

It is argued that the tax consequences to L. Bamberger & Company resulting in the sale to Aetna Life Insurance Company are immaterial on the question of true value. It seems to us that if the consequences are immaterial the sale with the return lease was immaterial upon the question of true value.

It is one of the most difficult fact questions to determine the true value of property situate like that before the Division of Tax Appeals and before us. The other proofs considered and weighed support the finding before us. In all cases it is not cost or use that is controlling. They are elements. It is not every sale even between a willing seller and a willing buyer that determines the question. All elements of proof must be considered as they were in this case.

The judgment is affirmed and the writ dismissed, with costs.