J. H. MILROY, Appellee,

v.

BOARD OF REVIEW OF the COUNTY OF BENTON, State of Iowa et al., Appellants.

No. 2–56011.

Supreme Court of Iowa.

March 19, 1975.

Boyd J. Milroy, Vinton, and Herrick, Langdon, Belin & Harris, Des Moines, for appellants.

Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and RAWL-INGS, LeGRAND, HARRIS and McCOR-MICK, JJ.

LeGRAND, Justice.

Originally this case involved protests over the valuation placed on four parcels of real estate by the Board of Review of Benton County for tax purposes. Plaintiff appealed to the district court, where the values on two of the pieces were affirmed with one slight variation. There is no appeal from these. The other two amounts were substantially reduced, one from $21,290.00 to $7,800.00 and the other from $11,300.00 to $6,600.00. Defendants appeal, asking that the valuations fixed by the Board of Review be reinstated. We reverse the trial court.

■ Our review is de novo. Power v. Regis, 220 N.W.2d 587, 589 (Iowa 1974); Wunschel v. Board of Review of Carroll County, 217 N.W.2d 576, 577 (Iowa 1974). We give weight to the trial court's findings but are not bound by them. Rule 344(f)(7), Rules of Civil Procedure.

The issue for us to determine is whether the district court erred in reducing the valuations which defendant Board of Review assigned to plaintiff's property.

Since Chapter 354, Laws of the 62nd General Assembly, made sweeping changes in 1967 to § 441.21, The Code (1966), we have reviewed valuation and assessment disputes in a number of cases. See Power v. Regis, supra; Wunschel v. Board of Review of Carroll County, supra; Maytag Company v. Partridge, 210 N.W.2d 584 (Iowa 1973); Juhl v. Greene County Board of Review, 188 N.W.2d 351 (Iowa 1971); and Tiffany v. Greene County Board of Review, 188 N.W.2d 343 (Iowa 1971). In addition to these, defendants rely heavily on Daniels v. Board of Review, 43 Iowa 405, 52 N.W.2d 1 (1952).

The pertinent portion of § 441.21 is now as follows:

"The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property. 'Market value' is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value. In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account; or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to sales to immediate family of the seller, foreclosure or other forced sales, contract sales, discounted purchase transactions or purchase of adjoining land or other land to be operated as a unit.

"* * * * * *

"Notwithstanding any other provision of this section, the actual value of any property shall not exceed its fair and reasonable market value.

"* * * * * *

"In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may consider its productive and earning capacity if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor. The following shall not be taken into consideration: Special value or use value of the property to its present owner, and

the good will or value of a business which uses the property as distinguished from the value of the property as property. Upon adoption of uniform rules and regulations by the state tax commission or succeeding authority covering assessments and valuations of such properties, said valuation on such properties shall be determined in accordance therewith for assessment purposes to assure uniformity, but such rules and regulations shall not be inconsistent with or change the foregoing means of determining the actual, market, taxable and assessed values.

"\* \* \* \* \* \*

"The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable or capricious; however, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed."

■ The following general standards announced in §§ 441.21 and 441.38 as construed in the cases already listed govern this appeal:

(1) There is no longer a presumption that the valuation is correct as made.

(2) The protesting taxpayer must prove the valuation is excessive, inadequate, inequitable or capricious.

(3) If the protesting taxpayer offers competent evidence by at least two disinterested witnesses that the market value is less than that fixed by the assessor, the taxing authority must then present evidence to uphold the valuation as made.

(4) Only those matters raised in protest before the Board of Review may be asserted on appeal to the district court; and, of course, only those matters raised and preserved in dis-

trict court may be considered on this appeal.

One procedural matter has served to confuse this dispute. The parties argue over whether plaintiff produced competent evidence by two disinterested witnesses as contemplated by § 441.21, The Code. We said in Tiffany v. Greene County Board of Review, supra, 188 N.W.2d at 348, this question must be decided by "a consideration of the testimony introduced in each case."

The two tracts involved are described as the SE ¼ of the SW ¼ of section 10–85–10 (consisting of 39 acres) and the NE ¼ of the NW ¼ of section 15–85–10 (consisting of 40 acres). Plaintiff produced two disinterested witnesses, the sum total of whose evidence was that the property was "wasteland" and "without value." Was this "competent evidence by two disinterested witnesses"?

■ The evidence is uncontradicted that plaintiff received an average income of $11,000 annually from the property and that it would yield valuable rock and sand for industrial and commercial use for many years to come. Yet plaintiff's disinterested witnesses described it as having no value for assessment purposes. If it is argued value must be determined by the willing buyer-willing seller standard, not on an income formula, we answer that income, present and potential, is an important factor in deciding what a willing buyer would pay and what a willing seller would take.

■ Presumably these witnesses were attempting to disaffirm market value could be "readily established" by the willing buyer-willing seller method because the property had no value. However, that statutory test presupposes both buyer and seller are "familiar with all the facts relating to the property." Obviously, one of these facts would be the income the land could produce; yet neither of plaintiff's witnesses considered this at all. In fact both testified they were not aware it brought in any revenue to plaintiff. While this perhaps satisfies the literal provisions relating to

evidence by two disinterested witnesses, because a zero market value is indubitably less than that fixed by the assessor, such lip service to § 441.21 is of no help to a court attempting to discharge its duty in reaching a proper valuation. Cf. Daniels v. Board of Review, supra, 243 Iowa at 416, 52 N.W.2d at 7. It is competent; but it is completely lacking in credibility when weighed against the evidence to the contrary.

In this connection the parties argue, too, over the meaning of § 441.37 as it relates to plaintiff's duty to show the actual value of his land, the amount by which he says it is overassessed, and what he considers a fair assessment. Plaintiff insists this applies only to *protest* proceedings before the Board. Defendants contend it applies to both protests and district court appeals. Plaintiff points out that, while § 441.21 refers to "both protests and appeals" when defining plaintiff's burden, § 441.37(2) speaks only of protest hearings in specifying what the taxpayer must show.

■ We cannot accept plaintiff's rationale. Of course, the language of § 441.37 is limited to protest hearings because that statute deals only with such procedures. However, the section immediately following (§ 441.38) limits grounds on appeal to those raised before the Board at the time of protest. We believe this means that if the grounds stated in § 441.37(2) were made the basis of protest before the Board and if those grounds are then carried over on appeal to the district court, plaintiff must allege and prove the same matters relied on by him at the protest hearing.

The result for which plaintiff argues would place a strained and irrational construction on the statute, which is plainly at odds with the general legislative purpose and plan of the chapter. See Northern Natural Gas Company v. Forst, 205 N.W.2d 692, 695 (Iowa 1973) and citations.

■ Coming now to the record before us, we are faced with credible evidence only from defendants. As already pointed out, we are unable to give any weight to plaintiff's evidence on value. We cannot agree with the trial court that plaintiff established by "competent evidence by two disinterested witnesses that the tract[s] [have] a readily ascertainable market value on the willing buyer-willing seller formula" of $7,800.00 in one case and $6,600.00 in the other. Taken in its entirety, the evidence does indeed show a readily ascertainable market value, but not at the values fixed by the trial court.

Plaintiff testified at length but gave no opinion as to the value of the assessed property. As already pointed out, his two disinterested witnesses (one an insurance and real estate broker, the other a retired banker, and both inheritance tax appraisers for Benton County) gave the property a "worthless" value.

The only other evidence by plaintiff concerned the value placed on plaintiff's property in 1968 or 1969 by an appraiser employed by Benton County—Doane Appraisal Company. Those values were $8,830.00 and $4,040.00 respectively.

Defendants' evidence consisted of the testimony of three witnesses—Homer M. Lockard, the assessor, Floyd R. Coots, the owner of a neighboring quarry, and Willard A. Stewart, an appraiser.

We consider Mr. Stewart's testimony decisive. He qualified as an expert real estate appraiser. He has valued approximately twenty taxing districts in Iowa, Pennsylvania, Michigan, and South Dakota; he has done private appraisal work for a number of corporations; he was employed in related work by the Iowa State Department of Revenue; he was regional director for 18 years for J. M. Clemenshaw Company of Cleveland working on the valuation of industrial and commercial properties; and he has been an instructor on appraisal procedures in several colleges and for several state assessors' groups. He is now president of Vanguard Appraisal Company, Inc., his own private appraisal company.

At the request of the defendant Board of Review, he made an appraisal of the real

estate involved in this appeal as of January 1, 1971.

██ He did so both on the basis of willing buyer-willing seller approach (§ 441.21) and also on the so-called income approach. Since we hold the evidence showed market value could be readily established by the willing buyer-willing seller formula, this method of valuation is mandatory. See Juhl v. Greene County Board of Review, supra, 188 N.W.2d at 353.

In arriving at his valuation, Mr. Stewart used three comparable sales. He put the market value of the two parcels here involved at $31,920.00 and $17,204.00 respectively. This is substantially more than the values placed on the property by defendant Board. The Board's figures are $21,290.00 and $11,330.00.

Mr. Stewart's testimony was supported by that of Homer M. Lockard, the Benton County assessor.

Under the record before us, we hold the valuation placed on plaintiff's property by defendant Board represents the fair and reasonable market value thereof.

We therefore reverse the trial court and restore the values established by the Board of Review.

Reversed.