**CITY OF ATLANTIC, Iowa, et al., Appellants,**

v.

**COUNTY BOARD OF REVIEW OF CASS COUNTY, Iowa, et al., Appellees.**

**No. 2–56540.**

Supreme Court of Iowa.

Nov. 12,. 1975.

Rehearing Denied Dec. 11, 1975.

Harold G. DeKay and J. R. Larson, Atlantic, for appellants.

Ronald W. Feilmeyer, and C. R. Yarham, County Atty., Atlantic, for appellee Bd. of Review.

William Oakes, Omaha, Neb., for appellees, Safeway Stores, Inc. and Bankers Life Co.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

MOORE, Chief Justice.

This court has adjudicated countless cases involving claimed overvaluation of real property by assessors and boards of review. This appeal presents for the first time a claim of undervaluation for property tax purposes.

After thorough study and survey to determine the needed area and most advantageous location for a new supermarket in Atlantic, Iowa, Safeway Stores, Inc. (Safeway) began taking options and finally purchased ten city lots and houses at a total price of $241,250. The cost of acquisition was initially estimated at $127,500. Safeway after removing the existing structures then commenced construction of a building designed for its particular use. The building, a large parking area, retaining walls and other necessary improvements for Safeway's supermarket operation were completed on July 30, 1970 at an additional cost of $358,970.

A few months after completion of construction and occupancy, Safeway sold the property by warranty deed to Bankers Life Company for the sum of $615,000. Concurrently Safeway and Bankers Life entered into a leaseback arrangement wherein Safeway leased the property for 20 years with options to renew at the end of that period. This "net lease" requires Safeway to pay all taxes, insurance, maintenance and upkeep. It allows Bankers Life to recoup its entire investment of $615,000 plus nine percent interest by the end of the 20-year term.

In early 1971, Cass County assessor caused the property to be valued for tax assessment pursuant to Code chapter 441, specifically 441.21. That valuation set the actual value of the property at $336,162. Shortly thereafter plaintiffs filed a protest before the County Board of Review asking the Board to raise the valuation of the property asserting violations of their due process and equal protection constitutional rights. The Board affirmed the assessor's valuation. This action was then filed in the district court which affirmed the Board. Plaintiffs have appealed from the judgment and decree of the lower court.

The issues here raised turn primarily on interpretation of Code section 441.21. Plaintiffs assert the trial court erred in holding the sale by Safeway to Bankers Life with the lease back to Safeway was an "abnormal transaction not reflecting market value" and that $336,162 was the actual value of the property.

Code section 441.21, as pertinent here, provides:

"441.21. Actual, assessed, and taxable value.

"1. All real and tangible personal property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and shall be assessed at twenty-seven percent of such actual value, and such value so assessed shall be taken and considered as the taxable value of such property upon which the levy shall be made.

"The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property. 'Market value' is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value. In arriving at market value, sale prices of

property in abnormal transactions not reflecting market value shall not be taken into account; or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to sales to immediate family of the seller, foreclosure or other forced sales, contract sales, discounted purchase transactions or purchase of adjoining land or other land to be operated as a unit.

"* * *.

"In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor. The following shall not be taken into consideration: Special value or use value of the property to its present owner, and the good will or value of a business which uses the property as distinguished from the value of the property as property. Upon adoption of uniform rules and regulations by the state tax commission or succeeding authority covering assessments and valuations of such properties, said valuation of such properties shall be determined in accordance therewith for assessment purposes to assure uniformity, but such rules and regulations shall not be inconsistent with or change the foregoing means of determining the actual, market, taxable and assessed values."

I. Our review of this case involving protests over the valuation placed on the parcel of real estate here involved is de novo. *Milroy v. Board of Review of County of Benton,* Iowa, 226 N.W.2d 814, 816; *Power v. Regis,* Iowa, 220 N.W.2d 587, 589, and citations. Weight is accorded trial court's findings but we are not bound by them. Rule 344(f)(7), Rules of Civil Procedure. Although we are not bound by trial court's findings on credibility of witnesses, we give weight to such findings. *N. W. Mut. Life Ins. Co. v. Bd. of Review,* Iowa, 225 N.W.2d 317, 319.

As we point out in *Milroy v. Board of Review of County of Benton,* supra, Iowa, 226 N.W.2d 814, 817, filed March 19, 1975, the following propositions are now well established by our case law and section 441.-21: (1) there is no longer a presumption the valuation as made is correct, (2) the protesting taxpayer must prove the valuation is excessive, inadequate, inequitable or capricious and (3) only those matters raised in protest before the Board of Review may be asserted on appeal to the district court and only those matters raised and preserved in district court may be considered on appeal to this court.

II. The record before us discloses plaintiffs submitted next to no evidence pertinent to the issues involved, as compared to that of defendants.

Plaintiffs put in evidence the lease and warranty deed from Safeway to Bankers Life which showed the purchase price as $615,000. Plaintiffs then called R. L. Goeken, the owner of a small grocery in Marne, Iowa, who related his experience in the early fifties of buying land in several states for Northern Natural Gas Company and stated he had been an appraiser since 1958. He had appraised for several lending institutions and had appraised a few small grocery stores but none comparable with a supermarket. Apparently Goeken did no more than walk through the Atlantic Safeway Store while buying groceries before arriving at his opinion of market value. He was aware of the Safeway-Bankers Life transaction.

In reference to Goeken's testimony, the trial court found:

"Appellants produced only one witness to testify to the value of the property; that witness had no extensive experience or qualifications with regard to such

properties and had not made a careful review of the structure nor in any way analyzed the same; he testified that in his opinion the property was of the value of $615,000.00; that the Court is of the opinion and finds that said testimony lacked weight and credibility and was of little or no value, and the Court has disregarded the same."

Our review of the trial transcript leads us to the same conclusion.

Defendants' first witness, Dale C. Faulkner, Safeway's property manager, with years of experience in acquiring suitable land and the building of these specialized structures, testified in detail of the Atlantic store costs and of the sale to Bankers Life with the leaseback agreement. He stated Safeway wants its money in the grocery business and not in real estate. He further testified it was very difficult to dispose of an abandoned special Safeway store building due to few buyers and necessary remodeling costs. Based on his experience he stated such unoccupied property even in larger cities than Atlantic, sold for thirty to forty thousand dollars. He estimated the market value of the property here involved at $387,873.

Don McLaren, Cass County Assessor for thirteen years, testified: "My opinion of the fair and reasonable market value of this property on January 1, 1971 is $336,163."

Louis E. Folkstad, an appraiser for the State Department of Revenue with extensive background, estimated the value of the property at $339,713. He also testified Safeway ran into unusual construction costs.

On cross-examination by Mr. DeKay, Folkstad was asked concerning what was considered as abnormal sales by the department and he gave several examples. This followed:

"Q. Now, would you say that a leaseback under today's commercial transactions is an abnormal transaction?

"A. Many of them are, yes.

"Q. In other words, you would say that those were abnormal transactions contrasting to what we call normal transactions?

"A. In many cases, I would, because the party is buying more than just real estate. They are buying the cash flow."

Defendants also introduced the deposition of Willard A. Stewart, whose testimony as an expert real estate appraiser, appears in many of our opinions. His qualifications and wide experience are detailed in *Milroy v. Board of Review of County of Benton,* supra, at page 818, 226 N.W.2d, where we stated, "We consider Mr. Stewart's testimony decisive."

Mr. Stewart measured and sketched the Safeway Store and land and made an in-depth study of the building and other improvements. Like all other witnesses he found no comparable sales and therefore used primarily the cost approach. He stated that this method seemed to be the most accurate approach to the fair and reasonable market value of the property. He also gave consideration to the income approach as it would be considered by the average prudent purchaser. Having examined Atlantic local land values, Stewart estimated the land value at $74,800 and the fair and reasonable market value of the entire property as of January 1, 1971 to be $347,800.

On cross-examination Stewart stated he did not consider the terms of the leaseback as:

"I'm only saying what a good prudent investor would be willing to invest his money for on this particular property, what he could expect from it. What the theories behind Bankers Life have buying this or investing this, through Safeway's name, or what, I have no idea what the conclusions were of that, but I am looking at it strictly from investment of what you or I or anyone else or prudent investor would be willing to pay for this property."

III. The trial court found the sale from Safeway to Bankers Life was a transaction which, while a real estate transaction, must be viewed more as a financial transaction and not a "normal sale" as required by the provisions of section 441.21 before sale price is to be considered in arriving at market value.

We have not heretofore considered section 441.21 as it relates to normal or abnormal sales. The specified examples of abnormal transactions indicate the sale is abnormal when the non-market factors distort the sale price sufficiently to make the sale price itself no longer indicative of the market value of the property.

The only case involving a sale-leaseback arrangement which has come to our attention is *L. Bamberger & Co. v. Division of Tax Appeals,* 136 N.J.L. 463, 57 A.2d 242, affirmed, 1 N.J. 151, 62 A.2d 389 (1948). The taxing year involved was 1945. Bamberger, desiring to free up extra capital entered into a sale-leaseback arrangement with Aetna Life Insurance Company who purchased the property involved for $6,750,000 and leased it back to Bamberger for 22 years with options to renew up to a total of 89 years. For that year, the assessed value of the property was $9,172,900. Bamberger was trying to get the assessment reduced to $7,300,000 on the basis of the sale which had taken place contemporaneously with the assessment.

The New Jersey law was similar to our statute. The New Jersey standard was "true value" which could be determined by a fair and bona fide sale. However, the sale price was not necessarily controlling if other circumstances showed the sale was not fair and bona fide.

At page 243, 57 A.2d, the court said:

"There can be little argument that the sale in question was not a fair and bona fide one, but there are other circumstances surrounding it which, in our judgment,

renders the sale price not controlling in this case."

After discussing the sale-leaseback transaction, the court at page 244, 57 A.2d concluded:

"We do not think that such a transaction is similar to the sale of property between a willing buyer and a willing seller. It must be regarded in a very different light from one where a willing owner sells to a willing buyer a residence at $10,000. The transaction is more in the realm of financial convenience than a transaction between a simple buyer and a seller. The sale was for the purpose of improving the capital structure with little or no change of occupancy and use."

■ We agree with the trial court's finding and conclusion that the sale by Safeway to Bankers Life was not a "normal sale." Under the record before us such a finding and conclusion is clearly required.

■ IV. We now come to the question of whether plaintiffs met their burden of proving the valuation set by the assessor was inadequate, inequitable or capricious. Under the record that burden rested on plaintiffs throughout the trial. Plaintiffs offered only one witness, Goeken, as to the value. The only credible evidence came from defendants' qualified expert witnesses. Each supported the valuation determined by the assessor. We, like the trial court, conclude plaintiffs failed to meet their burden of proof.

The decree and judgment of the lower court is affirmed.

Affirmed.