Marjorie F. WHITE and Ankeny
Ready-Mix, Inc., Appellants,

v.

BOARD OF REVIEW OF POLK
COUNTY, Iowa, et al., Appellees.

No. 56114.

Supreme Court of Iowa.

July 30, 1976.

Robert E. Dreher and John R. Hearn, Des Moines, for appellants.

J. R. McManus, Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS, and McCORMICK, JJ.

MASON, Justice.

Plaintiff, Marjorie F. White, owned a 5.9 acre tract of land and buildings located on the south edge of Ankeny with a 600-foot frontage on the south side of Ordnance Road. This property was leased to plaintiff Ankeny Ready-Mix Inc. for its concrete mixing plant operations. Mrs. White, her husband John C., and Leo T. Schuler were the officers of Ready-Mix at all times material.

Early in 1967 the Polk County assessor's office inspected the property with the intention of establishing its value as of January 1, 1968, for tax purposes. The 27 percent value of the land and buildings was determined to be $31,360.00, based upon a 100 percent value of $116,150.00 consisting of $30,900.00 for land and $85,230.00 for buildings and equipment.

The taxpayers had protested the assessment as being in error and in excess of the actual value of the property involved. The Polk Board of Review denied the protest and affirmed the assessment. June 28 the taxpayers filed a petition in the Polk district court appealing the decision of the Board. However, the case was not reached for trial in the district court for several years due to a number of continuances.

The tax assessment for 1971 was the same as the 1968 assessment. Again plaintiffs protested to the Board asserting that the property was assessed for more than the value authorized by law and that there was an error in the assessment. The Board rejected the claim the assessment was excessive. Another petition was filed in the district court appealing the Board's affirmance of the 1971 assessment. The cases were subsequently consolidated for trial in the district court.

The taxpayers had attacked the assessments on two theories: (1) the assessor included in both assessments the value of machinery and equipment and a building which were not in existence on the premises either in the year 1968 or the year 1971; and (2) the assessment was excessive and erroneous on a straight valuation basis.

Plaintiff-taxpayers appeal from the decree of the Polk district court dismissing their petitions in equity seeking relief from assessments made by the Polk county assessor for the years commencing January 1, 1968, and January 1, 1971, both regular real property assessment years.

Plaintiffs frame the issues presented by their appeal in this fashion: (1) whether the taxpayers proved and the trial court should have ruled the assessor made an error in his assessments of taxpayers' property which entitled them to a reduction in assessment for 1968 and 1971; and (2) whether the taxpayers proved by the testimony of two disinterested witnesses that their property was assessed at a higher value than authorized by law for the years 1968 and 1971.

I. The assessor's error referred to in plaintiffs' first contention related to a separate plant building and machinery and equipment installed therein which were retired from service.

In both petitions plaintiffs alleged: "5. The assessment against Appellants' land is excessive and confiscatory in that the assessed value is based on a valuation higher than its actual value and discriminatory against these Appellants contrary to law." It was requested the $31,360.00 figure be reduced to $19,710.00.

During the course of the district court proceedings, four "data cards" from the county assessor's office were admitted into evidence. These cards each described a building on plaintiffs' premises and listed its value.

Card 1 (card numbers correspond to exhibit numbers) represents a cement block and frame building used for garage, storage area and repair shop purposes. The evidence indicated the building is in poor condition and probably was not well built in the beginning.

Card 3 represents a "pole building," i. e., poles were driven into the ground, upon which were fastened sheets of corrugated steel. This structure is used mainly for truck storage, although there is a small finished office in one corner of the building.

Card 4 lists the actual plant and equipment for the mixing of concrete. This facility commenced operation in September 1966. The components of the mixing plant include storage bins, conveyor belt, a "batcher" and control panels. The building itself also contains an office, restroom and dock area.

The three buildings were in existence on January 1 of both 1968 and 1971. Except for its foundation the structure represented by Card 2 had been completely removed from the premises by December 1967. Deputy Assessor Frank L. Frost inspected the property early in 1967 when this old plant, known as the Greco plant, and new plant stood side by side. It is undisputed the assessor's total value of buildings as of January 1, 1968, included a $29,310.00 valuation for the Greco plant. The 1968 and 1971 total assessment figures were exactly the same.

Defendants argue the nonexistence of the Greco plant was not brought to the attention of the Board. This contention is bolstered by the fact Leo T. Schuler, manager of Ankeny Ready-Mix, informed neither the county assessor's office nor the Board the old plant and equipment had been sold and removed. The other two officers of the corporation, Mrs. White and her husband, John C. White, did not appear before the Board in either 1968 or 1971. Furthermore, Mr. White never notified the assessor's office of the Greco plant's removal. Defendants declare this ground was not mentioned in either of plaintiffs' protests to the Board.

In any event, it was adduced the old plant was sold to Ankeny Concrete Block (corporation) and was moved from plaintiffs' land December 9, 12 and 13, 1967. The old foundation, which no one contends had any value, was destroyed and removed in the spring of 1968. The trial court itself "accepted" the fact the Greco plant had been sold and paid for by December 1, 1967.

Defendants, in response, rely upon asserted procedural deficiencies on the part of plaintiffs. In this regard it is claimed plaintiffs' contention is not properly before this court because it was not presented be-

fore the Board. The relevant portions of the 1968 protest filed with the Board are set out in plaintiffs' reply brief.

" '2. That said property is assessed for more than the value authorized by law; that the amount of said over-assessment is $11,650.00; that $73,000.00 is its actual value

    Land . . . . . . . . . . . . $13,000.00
    Building . . . . . . . . . 60,000.00

and that 27% thereof or $19,710.00 is a fair assessment. (See Sec. 441.21, as amended by Sec. 1 of Chapter 354, Laws of the 62nd G.A. (1967)). This land, except a small portion thereof, was purchased in 1965 for $12,-600, leased for $960 per year for 5 years from July 15, 1965, based on 8% of the approximate cost and agreed value; all other items assessed are carried at cost of $98,300 less depreciation $18,000, net $80,-300 approximately on books of Lessee, Ankeny Ready-Mix, Inc. Assessment in excess of the amount stated in paragraph 2 violates Section 1, Chapter 354, Laws of 62nd General Assembly, and is excessive, inequitable and capricious.

" '3. (Omitted)

" '4. That there is an error in the assessment as follows: See statement under paragraph 2 hereof.' "

The following portion of the 1971 protest is also set forth:

" '4. That there is an error in the assessment as follows: Any assessment in excess of the amount stated in paragraph 2 violates Section 441.21, Code of Iowa, 1971, and is excessive, inequitable and capricious.' "

Defendants' argument is supported somewhat by the fact neither manager Schuler nor Mr. and Mrs. White informed the Board the Greco plant had been eliminated. It could not logically be claimed the Board was specifically apprised of this fact by plaintiffs' protests.

In their initial brief and argument plaintiffs specifically rely upon section 441.37(4), The Code, 1971. This provision states in relevant part:

*"Protest of assessment—grounds.* Any property owner or aggrieved taxpayer who is dissatisfied with his assessment may file a protest against such assessment with the board of review * * *. Said protest shall be in writing and signed by the one protesting or by his duly authorized agent. Taxpayer may have an oral hearing thereon if request therefor in writing is made at the time of filing the protest. Said protest must be confined to one or more of the following grounds:

"1. * * *

"2. * * *

"3. * * *

"4. That there is an error in the assessment and *state the specific alleged error.*

"5. * * *." (Emphasis supplied).

Plaintiffs did not state "the specific alleged error" before the Board which they presently assert as a ground for reducing the assessment. This court has held a ground not presented to a board of review may not be considered by the district court or, for that matter, the supreme court. See *City of Atlantic v. County Bd. of Review,* 234 N.W.2d 880, 882 (Iowa 1975); *Milroy v. Board of Review of County of Benton,* 226 N.W.2d 814, 817 (Iowa 1975); *Commercial Bk. & Tr. Co. v. Board,* 229 Iowa 1081, 1084, 296 N.W. 203, 204.

In reply brief, however, plaintiffs argue their protest was sufficient. "The particular reason why the property was over-assessed is demonstrated in this case by the fact that in both 1968 and 1971 the assessor was including a building and a plant which no longer existed on the premises. Such inclusion partakes of the nature of an error, but the end result is the overvaluation of the property that admittedly existed by reason of the fact that the assessor valued the latter as if the removed plant and building were still a part of the premises."

It is also argued proceedings before a board of review are informal and no transcript of the board hearing is needed to give the district court jurisdiction.

Of course, the alleged over-assessment is due to the "error" involved. Yet, neither

the appendix nor plaintiffs' reply brief allude to anything indicating the Board was apprised of removal of the Greco plant. It is difficult to ignore the plain wording of section 441.37(4).

In any event, even though the issue may well have been tried by consent, *Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 391 (Iowa 1975), the question should logically remain to be whether the assessments as a whole and as approved by the Board are sustainable. In this connection defendants have referred this court to the case of *Deere Mfg. Co. v. Zeiner,* 247 Iowa 1364, 1370, 78 N.W.2d 527, 531, where it is declared:

"The supreme court of Pennsylvania has at least twice approved this statement with which we agree: ' "When an appeal is taken from the decision of the board of revision * * * to the court * * * the question before the latter tribunal is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable, but whether the assessment of the subject as a whole is just and equitable." ' *In re Appeal of John Wanamaker, Philadelphia,* 360 Pa. 638, 647, 63 A.2d 349, 351, 353; *Hammermill Paper Co. v. City of Erie,* 372 Pa. 85, 92 A.2d 422, 427."

Consequently, inclusion of a nonexistent item in an assessment should not render that assessment void per se if the valuation as a whole is correct.

Also worthy of mention is defendants' assertion this matter is not properly before the court because of plaintiffs' failure to cite authority. True, the supreme court may refuse to review an unsupported contention. *Newman v. City of Indianola,* 232 N.W.2d 568, 574 (Iowa 1975). Yet, plaintiffs do refer to the statute. The inclusion of nonexistent property in an assessment would clearly constitute an "error" within the intention of section 441.37(4), The Code.

Finally, plaintiffs in their reply brief alleged the recent case of *Grundon Holding v.* *Bd. of Review of Polk Cty.,* 237 N.W.2d 755 (Iowa 1976) affords a basis for relief. Specifically, plaintiffs state:

"If the Court does not afford taxpayers relief based on the testimony of the two disinterested witnesses, then the *Grundon* case points the way for a decision in this case eliminating $29,310, being the valuation of the removed plant and building."

In *Grundon,* taxpayer's building was destroyed by fire in an "interim" year between the section 428.4 quadrennial valuation years. Under section 441.35 taxpayer sought reduction of the assessment because the property had decreased in value. (The protest specifically stated the building had been completely destroyed by fire). This court held plaintiff was entitled to reduction of the assessment, because, *"[i]n the present case,* it is manifestly unfair to compel plaintiff to pay real estate taxes on property which was not in existence for almost ten months of the year in question. * * * [citing authority]." 237 N.W.2d at 759. (Emphasis supplied).

Plaintiffs of course did not proceed under section 441.35. In any event, the better route in the present case would be to examine the sustainability of the assessment as a whole rather than to automatically reduce the assessment.

II. Plaintiffs insist they have established through testimony of two disinterested appraisers the involved property was assessed in excess of market value in the years 1968 and 1971. Many cases have come before this court challenging valuations placed upon property for taxation purposes. "Our review is de novo. Section 441.39, The Code; *Power v. Regis,* 220 N.W.2d 587, 589 (Iowa 1974); *Wunschel v. Board of Review, Carroll County,* 217 N.W.2d 576, 577 (Iowa 1974). Although we are not bound by trial court's findings on credibility of witnesses, we give weight to such findings. * * * Rule 344(f)(7), Rules of Civil Procedure.

"Much of the pertinent statutory law is contained in § 441.21, The Code. * * *. This enactment equates 'actual value' with 'market value', defines 'market value' by

the willing buyer-willing seller formula, and places the burden of proof upon the complainant attacking the assessment as excessive, inadequate, inequitable or capricious unless and until complainant produces competent evidence by at least two disinterested witnesses that the market value is less than that determined by the assessor.

"There is no presumption as to the correctness of the valuation of assessment appealed from. Section 441.39, The Code. The taxpayer no longer has the burden to prove that a grossly excessive valuation was made which resulted from the will rather than the judgment of the assessor. * * * [citing authority]. Further, * * '* * * the taxpayer is no longer required to prove, in order to prevail, that more is involved than a difference of opinion * *.' *Maytag Company v. Partridge*, 210 N.W.2d 584, 596 (Iowa 1973)." *N. W. Mut. Life Ins. Co. v. Bd. of Review*, 225 N.W.2d 317, 319 (Iowa 1975). See also *Milroy v. Board of Review of County of Benton*, 226 N.W.2d at 816–817 and *City of Atlantic v. County Bd. of Review*, 234 N.W.2d at 882.

Section 428.22, The Code, is relevant to the present factual circumstances in that it provides manufacturing machinery " * * 'must be deemed real estate, or regarded as such, in its assessment and taxation.' *Northwestern States Portland Cement Co. v. Board of Review of Mason City*, 244 Iowa 720, 728, 58 N.W.2d 15, 20." *Maytag*, 210 N.W.2d at 587.

■ In the case before us plaintiffs produced two experienced appraisal witnesses who testified the market value ascertained by the assessor's office was excessive. In that regard, no evidence was available concerning comparable sales of concrete mixing operations or anything else tending to indicate the amount a willing buyer would pay a willing seller for such property. Thus, admission of evidence concerning replacement value and depreciation was proper. As stated in *Juhl v. Greene County Board of Review*, 188 N.W.2d 351, 352–353 (Iowa 1971), section 441.21 " * * contemplates the willing buyer-willing seller standard shall be first used. Other de-

nominated methods may be used only if the property has no readily ascertainable market value under the buyer-seller test. Stated otherwise, the assessor (and later the court) may use one or more of the formulae based on productivity, earning capacity, industrial condition, cost, depreciation and the like if, *and only if*, the market value cannot be readily ascertained, under the willing buyer-willing seller formula." (Emphasis in original).

■ Plaintiffs' first expert appraisal witness was Paul Murray Work, a real estate broker and appraiser who has appraised property since 1950. He has, through the years, found himself on both sides of the fence in land valuation disputes. It was adduced Work has either testified or made appraisals for the city of Des Moines, the Des Moines school district, the Iowa State Highway Commission, the state of Iowa and Iowa Power and Light Company.

From careful examination of plaintiffs' property Work determined what he opined were the values of the land and buildings. The land itself is level with a very gentle slope. A railroad track, bisecting the plot east and west, renders the front (north) portion which borders on Ordnance Road more valuable. The back portion (used for dumping refuse) has no real access and is encumbered by a 30-foot driveway easement. Work felt the 1968 and 1971 land value remained unchanged since Ordnance Road is somewhat "static" and "never quite got off the ground." The computations are:

1. The front 2½ acres are valued at $5000.00 per acre or a total of $12,500.00.

2. The back 3.4 acres, valued at $2000.00 per acre, are worth $6,800.00.

3. The total land value for both years is $19,300.00.

The building represented in Card 1, portions of which are both concrete block and frame, was depreciated 50 percent by Work. The 1968 and 1971 values, which are the same since the building has depreciated as much as it can (the next step is demolition), total $9,400.00. It was adduced on redirect

examination the witness has appraised several concrete block buildings over the past few years.

Work depreciated the "pole building" by 65 percent, the value for both years being $3,364.00. Finally, the witness testified concerning the new concrete mixing plant. While, as stated, there were no comparable sales of this type of property in the area and while Work had never before appraised a concrete mixing plant, the total depreciated value of the plant and office was opined to be $23,409.00.

In calculating mixing plant value, Work employed a depreciation figure of 50 percent, even though the facility was constructed in 1966. From conversations with other cement plant operators, the appraiser concluded concrete mixing takes a "terrific toll" on machines and equipment. Furthermore, the day such a plant is built, it is " * * * functionally obsolete in terms of new plants that are being constructed * * *." Thus, because of both rapid physical and functional depreciation, Work employed the large depreciation figure, reaching the total plant-office value of $23,409.00 for both years.

The rounded off figures for the total operation are:

Land value ....... $19,300.00
Buildings ........ 36,200.00
Total ............ $55,500.00

Plaintiffs also called Neil C. Adamson, Jr., a real estate broker and appraiser and property manager, who owns what he has been told is the third largest real estate company in Des Moines. He has appraised "all types" of property and has testified in court over the last 10 to 12 years. Adamson does appraisals for about 40 companies and has also performed work for the "district court," the I.R.S., the Highway Commission, and the "Industrial Bureau of Fairfield."

Adamson appraised plaintiffs' property as of January 1, 1968 and 1971. He also reached different values for the parcels separated by the railroad tracks. Furthermore, he discussed costs with persons in the concrete business. Mr. Adamson noted appraisal was difficult due to the fact there were no comparable sales. And though he had never sold or bought a concrete plant, the witness, through his knowledge of industrial conditions, cost of concrete, the types of depreciation involved and the fact land values are generally increasing, determined the valuations as follows:

|  | 1968 | 1971 |
|---|---|---|
| Land value | $14,200.00 | $21,350.00 |
| Buildings | ($46,700.00) | ($47,500.00) |
| a) Card 1 | $ 8,142.00 | $ 7,851.00 |
|  | (35% deprec.) | (50% deprec.) |
| b) Card 3 | $ 3,376.00 | $ 4,168.00 |
| c) Card 4 | $29,100.00 | $22,000.00 |
| (10% deprec. per annum) | | |
| Total | $60,900.00 | $68,900.00 |

Thus, plaintiffs had produced competent evidence by two disinterested witnesses that the market value of the property in question was less than the market value determined by the assessor in each case. At this point defendants had the burden of persuasion on valuation. Section 441.21, The Code.

For the purpose of meeting this burden defendants called Frank L. Frost, who had, as stated, inspected the property early in 1967. A second inspection was made shortly before the court hearing. The witness discussed exhibit A, a list of equipment installed in plaintiffs' mixing plant furnished by the Engineering Equipment Company of Waterloo. From this he concluded the fair market value of the machinery and equipment, other than the building structure itself, to be some $50,000.00 to $60,000.00 new. Apparently, installation costs would run $10,000.00 to $15,000.00. "In light of what" the witness knew at the time of trial, he valued the entire operation at $125,000 to $130,000 as of January 1, 1968.

Frost noted in Polk County the trend in real estate values between 1968 and 1971 had been "upward in almost every case." Based on an average ten percent yearly

increase in land values, and obviously from his experience, Frost opined the total 1971 value to be $130,000.00, making allowance for approximately seven percent depreciation per annum.

Defendants' second appraisal witness was Eric Alfred Murrill, a man with 25 years experience in the field and who has done appraisal work for municipal bodies in Maine, New Hampshire, Vermont, New York, New Jersey, Connecticut, Indiana, Kansas and Iowa. Murrill has worked in several Iowa counties including Polk. What is more he has appraised "a number of batch plants" (apparently cement mixing plants)—several in Des Moines and one each in Clarinda, Shenandoah, Osceola, Audubon and Exira. Murrill stated there is considerable variation between the plants as to size, capacity and equipment. Exhibit B is a summary of the counties and cities by which the witness has been employed for appraisal work. Finally, Mr. Murrill possesses some teaching experience and has also assisted in publication of an appraisal manual by the Iowa State Tax Commission.

The witness noted different items of equipment will have different usable lives and, therefore, different depreciation rates. The average depreciation figure for this type of plant would be five to seven percent per year (in opposition to the ten percent and immediate 50 percent figures tendered by plaintiffs' witnesses). Murrill stated he had seen some Polk County cement plants operate 15, 20 or more years.

Based upon a "fairly recent" inspection of the property with utilization of his "knowledge of the trend of costs both from 1965 onward * * * and also backwards from the present time," Murrill concluded the January 1, 1968, total fair market value of the facility was $131,370.00. Likewise, his 1971 estimate, considering an approximate 20 percent increase in land value as well as plant depreciation, was $124,750.00. These figures include land values of $35,260.00 for 1968 and $42,310.00 for 1971.

The foregoing figures are in comparison to the 100 percent tax roll valuation for both years of $116,150.00.

It was adduced during trial Ankeny Ready-Mix had been sold for $175,000.00. This figure included other factors in addition to the land being taxed here, such as good will and an agreement to buy sand and gravel. The land and possibly the pole building were not included in the sale. Specifically, the depreciated buildings and equipment plus good will and a raw material purchasing agreement were worth $175,000.00.

The question is whether the foregoing evidence was sufficient to sustain defendants' burden of showing that a 100 percent valuation of all the property under consideration was $116,150.00, even though the assessor's original valuation included machinery and equipment and a building which were not in existence on the premises either in the year 1968 or the year 1971.

Where our review is de novo, as here, it is our responsibility to examine the whole record, review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issues have been raised and error, if any, preserved in the course of trial proceedings. While, as stated, weight will be given to the findings of the trial court, this court will not abdicate its function as triers de novo on appeal. *In re Marriage of Jennerjohn,* 203 N.W.2d 237, 240 (Iowa 1972).

We have followed the foregoing principle in reaching our determination in this matter and conclude defendants sustained their burden of persuasion on valuation.

The trial court's dismissal of plaintiffs' petitions seeking relief from assessments made by the Polk county assessor for the years commencing January 1, 1968, and January 1, 1971, is—

Affirmed.