**EQUITABLE LIFE INSURANCE COMPANY of Iowa, Appellant,**

v.

**BOARD OF REVIEW OF the CITY OF DES MOINES, Iowa, Appellee.**

**No. 61211.**

Supreme Court of Iowa.

July 25, 1979.

F. Richard Lyford and John R. Mackaman of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

Allan A. Herrick of Herrick, Langdon & Langdon and Jeffrey E. Lamson of Belin, Harris, Helmick & Lovrien, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McCORMICK and LARSON, JJ.

McCORMICK, Justice.

This appeal involves the 1975 assessed valuation of the Equitable Building in Des Moines. The assessor set the building and land valuation at $4,454,940. The owner, Equitable Life Insurance Company of Iowa, protested to the board of review. After a hearing, the board overruled the protest. Upon Equitable's appeal to district court the assessment was affirmed. Equitable then appealed to this court and we transferred the case to the Court of Appeals. The Court of Appeals reduced the assessment to $3,900,000, and we granted the board's petition for further review. We vacate the decision of the Court of Appeals and affirm the decree of the district court.

The questions presented are (1) whether, as a matter of law, the valuation may exceed that supported by Equitable's witnesses before the board of review, (2) whether the valuation is based on impermissible criteria, and (3) whether it is excessive.

The valuation is governed by the provisions of section 441.21, The Code 1973, as amended by 1974 Session, 65 G.A., ch. 1231, section 1. Under that statute property is to be assessed at its actual value, which means "market value," the exchange value between voluntary, informed buyers and sellers.

Two approaches for ascertaining market value are provided in the statute, the "sales prices" approach and the "other factors" approach. The sales prices approach depends upon the availability of sales prices of the property or comparable property in normal transactions. When market value cannot be readily established in that manner, the other factors approach is to be used. See Maytag Company v. Partridge, 210 N.W.2d 584, 587 (Iowa 1973); § 441.21(1) ("In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.").

A taxpayer protesting an assessment before the board of review has the burden to prove a statutory ground for protest. § 441.37. If the taxpayer "offers competent evidence by two or more disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed." § 441.21; Milroy v. Board of Review, 226 N.W.2d 814, 817 (Iowa 1975).

General principles controlling review of the board's decision are well established. Only those matters raised in protest before the board of review may be asserted on appeal to the district court; only those matters raised in district court may be asserted and considered on further appeal. § 441.38. No presumption exists that the assessor's valuation is correct. The appeal in district court is heard in equity, and the issues before the board are triable anew. § 441.39. Review of the district court decree is de novo. White v. Board of Review, 244 N.W.2d 765, 769 (Iowa 1976).

I. Board proceedings. Equitable first contends the board erred as a matter of law

in upholding the assessor's valuation when the only testimony came from two disinterested witnesses presented by Equitable. It asserts that in order to compel the board to do its duty in like cases this court should order that the valuation can be no greater than that supported before the board by its witnesses.

Board minutes show two appraisers appeared before the board for Equitable and were questioned by the attorneys and by members of the board. One appraiser fixed the building's value at $2,930,000 and the other at $3,050,000.

The assessor informed the board of his assessment, denied it was based on special use or goodwill, and said he believed it was correct. He offered written appraisals which had been made of the building by two independent appraisers in connection with litigation of the 1974 valuation. Those appraisals tended to support his assessment.

Equitable contends the assessor failed as a matter of law to carry his burden to uphold the valuation after it offered evidence through two disinterested witnesses that the market value of the property was less than the assessor's valuation. Equitable points out the appraisals offered by the assessor were for the prior tax year and the assessor's appraisers were not present for questioning.

█ We agree the burden of proof shifted to the assessor to uphold his valuation. However, even though the statute prescribes the method which must be employed by the taxpayer to trigger the shift in the burden of proof, it does not dictate any particular technique which must be used by the assessor to carry the burden when it has shifted to him.

█ Here the assessor's attorney cross-examined Equitable's witnesses and the assessor offered detailed appraisal data. Although the hearing was informal, the record shows it was full and fair. The statute does not require it to be conducted with the formalities of a common-law trial. From the evidence presented by the assessor, the board could reasonably conclude he met his burden to prove that the January 1, 1975, valuation was correct.

We find the board proceedings did not violate section 441.21(1) as alleged. Therefore we have no occasion to pass upon the remedy advocated by Equitable. We do note that the issues were tried and decided anew in district court as provided in the statute.

II. *Valuation criteria.* Equitable also contends the assessor's valuation is tainted because it was increased in retaliation for litigation over the January 1, 1974, valuation and because its unique value to Equitable was considered.

The 1974 interim assessment of $4,114,340 was litigated, and the assessor prevailed on grounds not related to those in this case. *See Equitable Life Insurance Company of Iowa v. Board of Review,* 252 N.W.2d 449 (Iowa 1977).

█ In the present case the assessor acknowledged that the appraisals which he obtained in connection with the prior litigation were primarily responsible for his increasing the assessment by $340,600 to $4,454,940 on January 1, 1975. However, neither this acknowledgment nor any other evidence in the record supports Equitable's claim that the 1975 increase was retaliatory. The record shows the earlier appraisals alerted the assessor to a possible under-valuation of the property. In this manner the litigation focused his attention on the issue, but we find no basis for finding the increased assessment resulted from vindictiveness. The increase was motivated by the appraisals rather than by the litigation.

Similarly, the record does not support Equitable's assertion that the valuation violates the proscription of section 441.21(1) against considering special value or use value of the property to its present owner in fixing valuation. This assertion is based on the fact that Equitable fully occupies floors nine through eighteen of the nineteen-story building and, in determining market value, the board appraisers hypothesized full occupancy of that space. Equitable argues that no other insurance company would want to

occupy a building so closely identified with Equitable and therefore the board's experts actually considered the special value or use value of the property to Equitable in violation of section 441.21(1).

The problem with Equitable's assertion is that the board appraisers based their views on the premise that a purchaser would be interested in utilizing the building in the same way as Equitable. They believed Equitable's use of the building was not in fact unique. The trier of fact might reject that premise but would not be bound to do so.

In our de novo review of this evidence, we find the premise is credible. The space occupied by Equitable is office space which could readily be used by any large enterprise desiring to house its home office under one roof. It is not tailored only to use by an insurance company. We believe it is likely it would continue to be used in similar fashion. We reached the same conclusion when confronted with the same argument in *Maytag Company v. Partridge*, 210 N.W.2d at 591 ("Presumably another competent home appliance manufacturer could step into Maytag's shoes and operate this plant.").

We find no merit in Equitable's contentions that the assessment was retaliatory and based on the building's special value or use value to its present owner.

III. *Correctness of the valuation.* Equitable's remaining contention is that the assessor's valuation is excessive. *See* § 441.-37(2). On this point the parties rely upon the testimony of their experts. Appraisers for Equitable were Arthur J. Frahm, Reaves Lukens and P. M. Work. The board appraisers were Eric Murrill, Willard Stewart and Harry A. Winegar. All used market, replacement cost, and income capitalization methods in arriving at their valuation estimates. Frahm and Work did not use the market data method in valuing the building, although they used it in determining the market value of the land.

The results under their three methods of valuation were as follows:

| | Market data method | Cost method | Income method | Final value |
|---|---|---|---|---|
| Frahm | not fully used | $2,920,000 | $2,920,000 | $2,920,000 |
| Lukens | $3,200,000 | 3,375,000 | 3,050,000 | 3,200,000 |
| Work | not fully used | 3,275,000 | 2,875,000 | 3,000,000 |
| Murrill | 6,200,000 | 6,300,000 | 4,350,000 | 4,900,000 |
| Stewart | 4,656,000 | 4,800,000 | 4,300,000 | 4,500,000 |
| Winegar | 5,500,000 | 5,700,000 | 4,300,000 | 5,000,000 |

Implicit in this evidence is an assumption by the parties that market value for the property could not readily be established through the "sales prices" approach alone but had to be determined by use of the "other factors" approach. *See* § 441.21(1). We believe this assumption is warranted.

However, the parties differ on whether the 1969 sale of the Des Moines Building was sufficiently comparable to permit its consideration in using the other factors approach. Equitable's appraisers Frahm and Work said the sale was not comparable, although Frahm had believed it was comparable in appraising the Equitable property in connection with the prior litigation. The other appraisers said it was comparable.

The Court of Appeals found "insufficient evidence of comparable sales to be of assistance." We disagree.

When the other factors approach is used it is not necessary that sufficient sales price data be available upon which to determine market value by use of that method alone. The other factors approach presupposes that the sales price data is insufficient to be relied upon as the sole basis for valuation. Only then is the other factors approach to be used. However, if even one comparable sale exists, it should be considered in using the other factors approach. Under that approach more than one factor must be used. § 441.21(1) ("the

actual value shall not be determined by use of only one such factor").

■ The Equitable Building and Des Moines Building are located at the same downtown intersection. The fourteen-story Des Moines Building was built in 1931, seven years later than the Equitable Building. It was purchased in 1969 by an insurance company for use as a home office. We find it is sufficiently similar in location, structure, age, and use to be considered comparable to the Equitable Building.

Its condition was not as good as that of the Equitable Building, and its new owners expended more than one million dollars in remodeling after its purchase. Nevertheless, its 1969 sale price of $1,802.335 amounted to $12.54 per square foot.

■ Adjustments for time, condition and quality indicate a substantially higher value per square foot for the Equitable Building on January 1, 1975. The sale of the Des Moines Building did not include the land, but this factor was also shown to be susceptible to adjustment. The assessor's valuation for the Equitable property was $13.84 per square foot. The final values arrived at by Equitable's appraisers were $8.17, $8.58, and $9.38, respectively. The board appraisers put the final value at $14.04, $15.52, and $15.89, respectively.

Consideration of the comparable sale of the Des Moines Building lends substantial support to the assessor's valuation.

We also believe the assessor's valuation is supported by the results reached through use of the replacement cost appraisal method. The differences in appraisals under this approach are attributable primarily to differing judgments regarding depreciation. We believe the figures used by the board appraisers are more realistic and therefore find their valuations through this method to be more credible.

Finally, the appraisers for each side differed widely in valuations arrived at through the income method. The income capitalization method of determining market value is discussed in *Northwestern Mutual Life Insurance Company v. Board of Review*, 225 N.W.2d 317 (Iowa 1975).

In the present case, the appraisers arrived at different results based upon different assumptions, particularly as to the vacancy rate to be attributed to the building, and rental income. The actual vacancy rate was approximately four percent, and the board appraisers assumed it would remain about the same upon a sale. Equitable's appraisers thought it would be substantially greater. Rental estimates of Equitable's appraisers did not include all space actually being used. Differing estimates were given regarding other assumptions, including mortgage interest rates.

Upon the whole record we believe the valuations arrived at by the board appraisers through use of this method are essentially correct.

If only the income capitalization method were used, a valuation lower than that fixed by the assessor would be required. Equitable argues that the income method is the only valid valuation technique for determining market value of its property, citing *Northwestern Mutual Life Insurance Company v. Board of Review* as recognizing that fact. That issue was not presented in *Northwestern Mutual*. The question in that case was what capitalization rate should have been used in appraising the property by the income method. *See* 225 N.W.2d at 319.

Sole reliance on only one valuation method is prohibited by section 441.21(1) when the other factors approach to valuation is used. Equitable argues that a potential investor in property of the kind involved here is concerned only about income. Apart from the legislature's answer to that argument, we believe sales data and replacement cost are also factors which are likely to have some influence on the price which a purchaser is willing to pay.

■ Giving full consideration to the results under all three appraisal methods, we believe the district court was correct in upholding the valuation.

We add a concluding note. In seeking further review of the Court of Appeals

decision, the board alleged the court erred in acting as "an independent assessing tribunal" and in considering only the income capitalization method in determining market value. We find no basis for holding that the Court of Appeals became an independent assessing tribunal as that term has been used in our cases, although we are less certain that the court followed the proscription of section 441.21(1) against using only one factor in the other factors approach to determining market value.

■ A court is not an independent assessing tribunal because it can only consider grounds of protest urged before the board. It does not fix an assessment as an original matter. *See Deere Manufacturing Co. v. Zeiner*, 247 Iowa 1364, 1370–1371, 78 N.W.2d 527, 531 (1956); *Bennett v. Board of Review*, 234 Iowa 800, 811, 13 N.W.2d 351, 357 (1954); § 441.38. The record shows the Court of Appeals considered only grounds of protest urged in district court and before the board. The mere fact that the court found merit in one of these grounds and fixed a different valuation than the appraiser does not establish a departure from its duty.

■ Once the Court of Appeals found the valuation was excessive, it was obliged to determine a fair market value for the property from a de novo review of the record. §§ 441.39, .43. *See Bartlett & Company Grain v. Board of Review*, 253 N.W.2d 86 (Iowa 1977). This it endeavored to do, explaining its reasons for deviating from the assumptions of the board appraisers. Even though we do not agree with the finding of excessiveness, we believe the Court of Appeals proceeded appropriately once that finding was made. Having held that the board met its burden to prove the valuation was not excessive, it is not necessary for us to proceed further.

DECISION OF COURT OF APPEALS VACATED; DECREE OF DISTRICT COURT AFFIRMED.